# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0983

═══════════

MCALLEN HOSPITALS, L.P. D/B/A MCALLEN MEDICAL CENTER, PETITIONER,

v.

STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════

**Argued December 4, 2013**

JUSTICE LEHRMANN delivered the opinion of the Court.

To assist hospitals with securing payment for medical services provided to accident victims, Texas Property Code chapter 55 (the Hospital Lien Statute) allows a hospital to file a lien on a patient's cause of action against a person whose negligence caused the injury that necessitated the patient's treatment. If the hospital's charges secured by a proper lien are not "paid" within the meaning of the statute, any release of the patient's cause of action is invalid. In this case, two patients treated at the petitioner's hospital settled with the negligent third party. That party's liability insurer made the settlement checks jointly payable to the patients and the hospital and delivered the checks to the patients, who deposited them without the hospital's endorsement. The issue presented is whether the hospital's charges were "paid" under the Hospital Lien Statute and

the Uniform Commercial Code even though the hospital never received notice that the settlement funds had been delivered to the patients and were never reimbursed for the treatment costs. We hold that they were not.

But this does not end the inquiry. Although failure to "pay" the hospital invalidates the releases of the patients' negligence causes of action, the question remains whether the hospital may enforce its lien by suing the negligent person or his liability insurer directly. However, this issue was neither raised in the underlying summary judgment motion nor argued on appeal. As a result, we may not decide it. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Background

Jose Gil and Melinda Hernandez were involved in a car accident with Carlos Benavidez, who was insured by State Farm County Mutual Insurance Company of Texas (State Farm). McAllen Hospitals, L.P. d/b/a McAllen Medical Center (the Hospital) treated Gil and Hernandez for their injuries. The cost of treatment totaled $53,564 for Gil and $1,281 for Hernandez. To secure payment, the Hospital filed hospital liens under chapter 55 of the Texas Property Code. The validity of those liens is not in dispute.

Gil and Hernandez settled with Benavidez for $5,200 and $2,100, respectively, and released their claims against him. The Hospital was not a party to the releases, nor was it informed the parties had settled. State Farm, aware of the Hospital's liens, informed Gil that he was responsible for paying the Hospital for its services out of the settlement funds.[1] State Farm issued Gil's

_____

[1] The record does not reflect that State Farm similarly instructed Hernandez.

2

settlement check payable to "Jose Antonio Gil & Rafaela Balderas, Individually and as husband and wife & McAllen Medical Center," and issued Hernandez's check payable to "Melinda De La Garza Hernandez, a Single Individual & McAllen Medical Center." State Farm sent the checks to Gil and Hernandez without notifying the Hospital. Both Gil and Hernandez deposited their settlement checks without the Hospital's endorsement. The Hospital's charges for treating Gil and Hernandez remain outstanding.

The Hospital sued State Farm to enforce its hospital liens, seeking to recover the outstanding treatment costs up to the amount of the settlements.[2] In response, State Farm contended that it met its obligation to pay the Hospital under the Hospital Lien Statute by making the checks payable to the Hospital as a copayee. After considering competing cross-motions, the trial court granted summary judgment for State Farm. The court of appeals affirmed. ___ S.W.3d ___.

## II. Discussion

The Texas Legislature passed the Hospital Lien Statute "to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims" and reducing hospital costs. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985). Under the Hospital Lien Statute, a hospital has a lien on the cause of action of a patient "who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person," provided that the patient is admitted to the hospital within seventy-two hours of the accident. TEX. PROP. CODE § 55.002(a). The lien also attaches to

---

[2] In the same suit, the Hospital brought claims against several other insurers to enforce hospital liens arising out of outstanding charges for the treatment of victims of unrelated accidents. Only the claims against State Farm arising out of the Hospital's treatment of Gil and Hernandez are at issue here.

3

the proceeds of a settlement of the patient's cause of action or to damages awarded in a judgment. *Id.* § 55.003(a)(2)–(3). A hospital must comply with statutory notice and recording requirements to secure its lien. *Id.* § 55.005. The Hospital undisputedly complied with those requirements in this case.

Ideally, the statute serves its purpose: an accident victim receives necessary medical treatment, and the treating hospital is ensured at least partial payment, even when the patient is indigent. This case requires us to examine the consequences when, notwithstanding a valid lien and settlement proceeds to which the lien attaches, a hospital does not receive the payment contemplated by the statute.

### A. Payment of Charges under Section 55.007

The applicability of section 55.007 of the Hospital Lien Statute forms the crux of the parties' dispute. That section, which addresses the effect of a hospital lien on the validity of a release of the underlying cause of action to which the lien has attached, provides in pertinent part:

> (a) A release of a cause of action . . . to which a lien under this chapter may attach is not valid unless:
>
> > (1) the charges of the hospital or emergency medical services provider claiming the lien were paid in full before the execution and delivery of the release;
> >
> > (2) the charges of the hospital or emergency medical services provider claiming the lien were paid before the execution and delivery of the release to the extent of any full and true consideration paid to the injured individual by or on behalf of the other parties to the release; or
> >
> > (3) the hospital or emergency medical services provider claiming the lien is a party to the release.

*Id.* § 55.007(a). The satisfaction of one of the three options in section 55.007(a) is thus a condition to the validity of the release. In this case, it is undisputed that the Hospital's charges for treating Gil and Hernandez were not and have not been paid in full, and that the Hospital was not a party to the releases of the patients' causes of action against Benavidez. *See id.* § 55.007(a)(1), (3). The parties dispute only whether the Hospital's charges were "paid . . . to the extent of any full and true consideration paid to [Gil and Hernandez]," such that the releases were valid under section 55.007(a)(2).

State Farm argues that, by issuing settlement checks to the patients and the Hospital as copayees, and delivering those checks to the patients, State Farm made a good-faith effort to pay the Hospital's charges "to the extent of any full and true consideration" paid to Gil and Hernandez. State Farm contends that it effectively "paid" the Hospital, even though the Hospital was never notified that the claims had been settled, never endorsed the checks, and never received any compensation for the patients' treatment costs. The Hospital argues that, having never received any actual compensation for the services it rendered to Gil and Hernandez, it was not, in fact, "paid" in the sense that section 55.007 requires.

Because this case involves State Farm's use of negotiable instruments to satisfy its underlying obligations, we turn to the Uniform Commercial Code (UCC), as codified in the Texas Business and Commerce Code, to evaluate the parties' dispute. *See* TEX. BUS. & COM. CODE § 3.102. The issue may be framed as follows: whether issuance of a draft made out jointly to two nonalternative payees, one of whom presented the draft for payment without the endorsement of the other, discharges the drawer's obligation to the payee whose endorsement was not obtained. The

5

court of appeals addressed a similar issue involving a forged endorsement in *Benchmark Bank v. State Farm Lloyds*, and State Farm relies heavily on that case. 893 S.W.2d 649 (Tex. App.—Dallas 1994, no writ). In *Benchmark*, the drawer issued drafts to nonalternative copayees (Benchmark and the Calderons) and delivered the drafts to the Calderons, who forged Benchmark's endorsement and presented the drafts for payment. *Id.* at 650. The court of appeals held that (1) possession of the draft by one joint payee constitutes constructive possession by the other, and (2) Benchmark had no further recourse against the drawer after the drafts were honored and paid. *Id.* at 651. As discussed below, while we agree with the court's first holding, we disagree with its conclusion that the copayee had no further recourse against the drawer.

First, we hold that State Farm's delivery of the drafts to Gil and Hernandez constitutes constructive delivery of the drafts to the other copayee, the Hospital. TEX. BUS. & COM. CODE § 3.420 cmt. 1. However, that does not end our analysis. The UCC instructs that "an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument, and to a person entitled to enforce the instrument." *Id.* § 3.602(a). And the UCC explains that, when a draft is issued to nonalternative copayees, one copayee acting alone is not entitled to enforce, and thus may not discharge, the instrument. Specifically, the statute provides: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." *Id.* § 3.110(d). The Comment to this section of the Code further clarifies:

> If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument. The instrument is "payable to an identified person." The "identified

6

person" is X and Y acting jointly. . . . Thus, . . . X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument.

*Id.* cmt. 4.

Applying these principles, the Massachusetts Supreme Judicial Court, addressing the same issue presented here, reached the opposite conclusion of the *Benchmark* court. In *General Motors Acceptance Corp. v. Abington Casualty Insurance Co.* (*GMAC*), an automobile insurer issued a check jointly payable to its insured and to the company that held a security interest in the insured's vehicle. 602 N.E.2d 1085, 1086 (Mass. 1992). The insured presented the check without the lienholder's endorsement and received full payment. *Id.* The lienholder sued the insurer—but not the insured or the payor bank[3]—for recovery of the insurance proceeds, claiming that the insurer's underlying obligation to a copayee was not discharged when another copayee cashed a check without the proper endorsements. *Id.* at 1086–87. Agreeing with the lienholder, the court held that, although delivery to one copayee constitutes delivery to the other, "[o]bligations on a negotiable instrument . . . do not end with delivery to a payee." *Id.* at 1087. Citing Massachusetts' analogous UCC provisions, the court noted that the insured copayee could not have become a holder of the draft without the lienholder's endorsement and that, "[w]ithout payment to a holder, the liabilities of the parties to the check are not discharged." *Id.* at 1088. The court ultimately concluded: "[T]o protect the rights of all joint payees as well as the integrity of the commercial paper itself, we hold that payment of a check to one copayee without the endorsement of the other copayee does not

---

[3] Under the UCC, "payor bank" means a bank that is the drawee of a draft. TEX. BUS. & COM. CODE § 4.105(3). A "drawee" is a person ordered in the draft to make payment. *Id.* § 3.103(a)(4).

7

discharge the drawer of either his liability on the instrument or the underlying obligation." *Id.* at 1088.

Guided by a well-respected legal treatise in evaluating the opposing holdings in *GMAC* and *Benchmark*, we conclude that the approach adopted in *GMAC* is "representative of the better view." 28 WILLISTON ON CONTRACTS § 72:36 (4th ed. 2003); *see also* Restatement (Second) of Contracts § 299 (1981) (noting that the UCC creates an exception for negotiable instruments to the general rule that tender of performance to any joint obligee discharges a promisor's liability to all). The court recognized in *GMAC* that holding otherwise would result in "no assurance that all the joint payees would receive payment" and would dissolve any distinction between drafts made out to alternative copayees and drafts made out to nonalternative copayees. 602 N.E.2d at 1088. Other jurisdictions have cited *GMAC* with approval and adopted its reasoning. *See State ex rel. N.D. Housing Fin. Agency v. Ctr. Mut. Ins. Co.*, 720 N.W.2d 425, 429–30 (N.D. 2006) (holding that forged endorsement by nonalternative copayee did not discharge drawer's obligation to other copayee); *Crystaplex Plastics, Ltd. v. Redevelopment Agency of City of Barstow*, 92 Cal. Rptr. 2d 197, 203–04 (Ct. App. 2000) (payee could maintain cause of action against drawer under UCC after copayee cashed check with forged endorsement). We join these jurisdictions and hold that delivery of a check to one copayee constitutes constructive delivery to all. However, because payment to one nonalternative copayee without the endorsement of the other is not payment to a "holder," it does

8

not discharge the drawer of either his liability on the instrument or his underlying obligation.[4] *GMAC*, 602 N.E.2d at 1088.

State Farm argues that the Hospital's preferred course is to sue the payor bank that improperly paid the instruments lacking the Hospital's endorsement. While the Hospital could have attempted to pursue the payor bank for relief directly,[5] its failure to do so does not affect State Farm's obligations under the UCC. That more efficient avenues of recovery may exist for a wronged copayee does not alter our analysis of whether the Hospital was "paid" in accordance with the UCC and the Hospital Lien Statute.[6]

Accordingly, given that (1) State Farm issued the settlement checks payable to the patients and the Hospital as nonalternative copayees, (2) State Farm delivered the checks to the patients without notifying the Hospital, (3) the Hospital did not endorse the checks, and (4) the patients nevertheless deposited the checks, we hold that State Farm's actions did not constitute payment to a "holder" under the UCC, and therefore State Farm was not discharged of its underlying obligations. In turn, State Farm has not shown that "the charges of the hospital . . . claiming the lien were paid before the execution and delivery of the release [of the injured individual's cause of

---

[4] We do not address this holding's applicability to copayees in an agency relationship, as that scenario is not presented. *See Kenerson v. FDIC*, 44 F.3d 19, 23 (1st Cir. 1995) (holding that common law rule of agency relieved drawer of liability where one payee forged endorsement of copayee); *see also GMAC*, 602 N.E.2d at 1087 (noting that the copayees in that case were "not in an agency relationship").

[5] A drawee that makes payment "for a person not entitled to enforce the instrument or receive payment" may be liable in conversion. TEX. BUS. & COM. CODE § 3.420; s*ee also Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 105 (Tex. 2004).

[6] As to State Farm's rights under the UCC, we note that a drawee may not charge its customer's account on an instrument that is not properly authorized. TEX. BUS. & COM. CODE § 4.401(a); *see also id.* § 3.420 cmt. 1; *Tex. Stadium Corp. v. Sav. of Am.*, 933 S.W.2d 616, 622 (Tex. App.—Dallas 1996, writ denied).

action] to the extent of any full and true consideration paid to the injured individual by or on behalf of the other parties to the release." TEX. PROP. CODE § 55.007(a)(2). As a result, State Farm was not entitled to summary judgment on this ground.

### B. Cause of Action under Hospital Lien Statute

Our conclusion that the Hospital's charges have not been "paid," and its lien not satisfied, logically leads to the issue of the Hospital's proper remedy; specifically, whether a hospital may enforce its lien by directly pursuing the negligent third party or that party's liability insurer. If it can, the Hospital may recover from State Farm. If it cannot, the Hospital has no cause of action against State Farm notwithstanding the invalidity of Gil's and Hernandez's releases of their causes of action against State Farm and its insured.

In *Baylor University Medical Center v. Borders*, 581 S.W.2d 731, 733 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.), the court of appeals held that the Hospital Lien Statute gives hospitals a separate cause of action to enforce a hospital lien independent of the patient's obligation to pay the bill. We have cited the *Borders* holding in discussing the general purpose of the Hospital Lien Statute, but have never been directly presented with or resolved the issue that was decided in that case. *See Bashara*, 685 S.W.2d at 309. The Hospital Lien Statute's language, however, calls the *Borders* court's conclusion into question. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) ("The plain language of a statute is the surest guide to the Legislature's intent.").

The Hospital Lien Statute does not expressly create a cause of action against third parties to enforce a lien. But section 55.007 does delineate the consequence when a hospital with a valid lien

10

is not properly paid out of the proceeds of a patient's settlement with a third party. Specifically, as discussed above, the statute invalidates the release of a cause of action "to which a lien under this chapter may attach," *i.e.*, the patient's cause of action against the person whose negligence caused the accident that necessitated treatment. *See Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007). As a result, the patient's cause of action, previously settled, is revived, and the hospital retains its lien on that cause of action. TEX. PROP. CODE § 55.007(a).

Because the Legislature specified a remedy for failure to properly satisfy a hospital lien, and did not include a concomitant cause of action for enforcement, we question the propriety of reading into the statute such an additional remedy. *See Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute."). However, resolution of the issue would be improper, as it was not raised in the trial court as a ground for summary judgment and was not briefed in the court of appeals or in this Court, and therefore has not been preserved for our review. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (holding that a summary judgment may be affirmed "if any of the theories presented to the trial court and preserved for appellate review are meritorious"). Although counsel for the parties briefly addressed the issue at oral argument in response to questions from the Court, that discussion was insufficient to preserve for our review a ground that was not raised in State Farm's summary judgment motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (holding that summary judgment may not be affirmed on grounds not set out in the motion for summary judgment). Therefore, we do not reach this issue.

11

### III. Conclusion

For the reasons set forth above, we hold that (1) payment of a check to one nonalternative copayee without the endorsement of the other does not constitute payment to a "holder" and thus does not discharge the drawer of either his liability on the instrument or the underlying obligation, (2) the court of appeals erred in holding that the patients' releases of their causes of action against Benavidez were valid under section 55.007 of the Hospital Lien Statute, and (3) the Hospital's liens on those causes of action therefore remain intact. We do not resolve the question of whether the Hospital has a separate cause of action under the Hospital Lien Statute against State Farm, as this issue has not yet been raised as a ground for summary judgment and therefore is not properly before us. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 16, 2014