**GUSMA PROPERTIES, L.P.**
and Gusma Investments,
**L.P., Appellants**

v.

The **TRAVELERS LLOYDS INSURANCE COMPANY,**
Appellee

NO. 14–15–00892–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Memorandum Opinion filed
December 29, 2016

---

Vincent L. Marable, III, Wharton, TX, William Fred Hagans, Kendall C. Montgomery, Houston, TX, for Appellant.

Warren Wise, Greg Christopher Wilkins, Beaumont, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices McCally and Brown.

## OPINION

Sharon McCally, Justice

Appellants Gusma Properties, L.P. and Gusma Investments, L.P. (collectively, the Gusma parties)[1] challenge the trial court's (a) grant of summary judgment in favor of appellee the Travelers Lloyds Insurance Company on the Gusma parties' claim under the Texas Insurance Code's prompt payment provisions and (b) denial of the

---

1. The insurance policy in this case provided coverage to both Gusma Properties and Gusma Investments. The Gusma parties have not distinguished between themselves on appeal, other than stating that the check was payable to Gusma Properties. We will refer to them collectively as the "Gusma parties" throughout this opinion, except where we are able to distinguish between the two entities.

Gusma parties'· amended motion for partial summary judgment. Because we determine that the trial court correctly granted Travelers' motion for summary judgment, we affirm.

## I. BACKGROUND

The material, underlying facts are undisputed. Travelers insured five buildings owned by Gusma Properties, L.P. that were damaged by Hurricane Ike. After Gusma Properties filed a claim for damages, Travelers. demanded appraisal. Gusma Properties retained attorney Ricardo A. Baca of the RAB Law Firm to assist in its claims against Travelers and to pursue the Gusma parties' insurance claims through the appraisal process. On October 6, 2014, the appraiser issued an appraisal award in the amount of $1,850,142.93. Eight days later, Travelers tendered a check in that amount jointly payable to the RAB Law Firm, P.C. and Gusma Properties. Attorney Baca negotiated the check without the indorsement of Gusma Properties and retained all of the funds.

When the Gusma parties learned of the converted appraisal funds, they filed suit against, *inter alia*, attorney Baca; Bank of America, and Citibank and Travelers to recover the appraisal-award funds. Specifically, with regard to Travelers, the Gusma parties sued for (a) breach of the insurance contract, (b) recovery on the check under Texas Business & Commerce Code section 3.309; and (c) delay damages under sections 542.051 through 542.061 of the Texas Insurance Code (the Prompt Payment provisions). The Gusma parties contend that Travelers is liable because it should have made the check payable to "RAB Law Firm, P.C., in trust as attorneys for Gusma Properties, L.P."

During the course of the litigation, the Gusma parties settled with Bank of America and Citibank (the Bank defendants) for $1,850,142.93, the amount of the check issued by Travelers for the appraisal award. Then Travelers sought summary judgment on all of the Gusma parties' claims against Travelers. The Gusma parties agreed that the settlement with the Bank defendants and the July 17, 2015 settlement payment "had the effect of satisfying Travelers' obligation to pay the $1,850,142.93 under the Insurance Policy and the UCC." As such, the trial court entered summary judgment for Travelers on the Gusma parties' breach of contract claim and its negotiable instrument claims; the Gusma parties do not ask this court to reverse the summary judgment on those claims.[2]

However, the Gusma parties continued to pursue delay damages under the Prompt Payment provisions of the Texas Insurance Code. In both their response to Travelers' summary judgment motion and their own motion for partial summary judgment, the Gusma parties sought delay damages for Travelers' alleged failure to timely "discharge its obligation" to pay the

---

**2.** The Gusma parties ask that the Court reverse the summary judgment on prompt payment damages and remand for the trial court to consider their request for attorney's fees and prejudgment interest; the Gusma parties make clear that they seeks attorney's fees under the Insurance Code, not the contract. Because Travelers prevailed on its motion for summary judgment directed to the Gusma parties' breach-of-contract action and the Gusma parties do not seek a reversal of that ruling, we conclude that, to the extent that the

Gusma parties urge that Travelers failed to pay promptly under the insurance contract or owes prompt payment penalties for failing to pay in accordance with the contract, that claim fails. *See, e.g., Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 253–54 (Tex. 2009) (per curiam) (holding that "because the insurer "did not breach the insurance contract, no basis supports" an award for punitive or extra-contractual damages).

appraisal award through July 16, 2015. The Gusma parties' theory of the prompt-payment violation claim derives entirely from overlaying the negotiable-instrument provisions in Chapter 3 of the Texas Business and Commerce Code (the "Texas UCC") onto Travelers' prompt-payment obligations. Travelers responds that its tender of a check to the Gusma parties' attorney was payment to them; therefore, Travelers reasons that it complied with the Prompt–Payment provisions. On the Prompt–Payment provisions claim, the trial court denied the Gusma parties' amended motion for partial summary judgment, granted Travelers' motion for summary judgment, and rendered a take-nothing judgment against the Gusma parties. The Gusma parties timely appealed.

## II. ANALYSIS

### A. Standard of Review

On this record of undisputed facts, we review *de novo* the trial court's summary-judgment legal conclusions disposing of the Gusma parties' Prompt–Payment provisions claim. *See, e.g., Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009).

### B. Governing Law

The case presents a question of first impression: Does an insurer delay payment, within the meaning of the Prompt Payment provisions, when it tenders payment to the insured's authorized counsel in the form of a negotiable instrument that is made jointly payable to both the insured and its counsel? We agree with the trial court that the answer to this question is "no" as a matter of law. We first outline the competing principles of law.

### 1. Under the Prompt Payment provisions, an insurer is penalized for its delay of payment.

■ The Prompt Payment provisions were formerly codified as Article 21.55 of the Insurance Code; in 2003, Article 21.55 was recodified "without substantial change." *See Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007). We begin with the language of the provisions to determine legislative intent from the words and then, if necessary, consider the statute as a whole to harmonize all provisions. *See id.* at 16. To prevail on a claim for penalty interest under the Prompt Payment provisions, the insured bears the burden to prove "(1) a claim was made under an insurance policy; (2) the insurer is liable for the claim; and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim." *United Nat'l Ins. Co. v. AMJ Invs. LLC*, 447 S.W.3d 1, 13 (Tex. App.–Houston [14th Dist.] 2014, pet dism'd). Travelers did not and does not challenge the first two elements.

The Prompt Payment provisions establish a series of deadlines[3] for insurers in the claims-handling process. Tex. Ins. Code §§ 542.051–061. These deadlines serve the same policy: "[T]o promote the prompt payment of insurance claims." *Id.* § 542.054. The provisions afford "additional damages when an insurer wrongfully refuses or delays payment of a claim." *Lamar Homes, Inc.*, 242 S.W.3d at 16; *see* Tex. Ins. Code § 542.060. As is relevant here, section 542.058 provides that if an insurer "delays payment of the claim for a period exceeding the period specified by

---

**3.** The Prompt Payment provisions do not specify when, following appraisal, timely payment of an appraisal award must be made. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563–64 (Tex. App.–Houston [14th Dist.] 2010. orig. proceeding). For purposes of our analysis, we presume, as do the parties, that the deadline for Travelers to pay the appraisal award was October 28, 2014.

other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." Tex. Ins. Code § 542.058. Section 542.060 establishes damages, in addition to the amount of the claim, of 18% interest and reasonable attorney's fees for failure of an insurer to be "in compliance." *Id.* § 542.060.

**2. Under common law agency principles, the principal bears the risk of the agent's wrongdoing.**

■ Texas courts hold that where "an agent misappropriates payments intended for its principal, it is the principal that bears the loss because, after the payment has been made to the agent, the payment is deemed to have been made to the principal." *See Metro. Ins. & Annuity Co. v. Peachtree Settlement Funding, LLC*, 500 S.W.3d 5, 19 (Tex. App.–Houston [1st Dist.] 2016, no pet.) (citing *Jarvis v. K & E Re One, LLC*, 390 S.W.3d 631, 640 (Tex. App.–Dallas 2012, no pet.)); *see also Cash v. Lebowitz*, 734 S.W.2d 396, 399 (Tex. App.–Dallas 1987, writ ref'd n.r.e.). The policy underlying the principle is clear: As between the two, the party who placed trust in the wrongdoer was in the best position to avoid the loss and, therefore, should suffer the loss. *See Cash*, 734 S.W.2d at 399 (noting that "[i]f Brown is Lebowitz'[s] agent, then between Cash and Lebowitz, any damage resulting from Brown's faithlessness and chicanery must be borne by Lebowitz, Brown's principal").

■ An attorney-client relationship is generally an agency relationship. *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986) (holding that "the attorney's acts and omissions within the scope of his or her authority are regarded as the client's acts"). It is undisputed that Baca was the Gusma parties' attorney for the transactions in question. The Gusma parties' uncontroverted summary judgment evidence establishes that Gusma Properties "retained Mr. Ricardo A. Baca and his firm [the] RAB Law Firm, P.C. to represent [Gusma Properties] in its claims against Travelers" and to "pursue [Gusma Properties'] insurance claims through the appraisal process under the policy of insurance with Travelers." [4]

The Gusma parties suggests that the agency relationship between them and Baca is irrelevant once Travelers made the check payable jointly and non-alternatively because "there is nothing within the UCC statutory provisions or the case law and nothing is cited by Travelers which made any type of distinction based on the nature of the relationship of the payees." The Gusma parties are incorrect, as we outline below.

**3. Under the Texas UCC, constructive delivery of an instrument jointly payable to co-payees *who are not in an agency relationship* does not discharge the drawer's obligation on either the underlying obligation or the negotiable instrument.**

■ The Gusma parties' theory of Travelers' prompt-payment violation derives

---

**4.** The Gusma parties have never disputed that Baca was Gusma Properties' attorney, owed Gusma Properties a fiduciary duties, and was Gusma Properties' authorized representative in handling the insurance claim and the appraisal of that claim. More importantly, the Gusma parties never contended and did not adduce evidence that Baca was not author-ized to receive or accept the check from Travelers as payment on the appraisal award. The only act that the Gusma parties dispute as within the scope of Baca's authority in this case is negotiating the check without Gusma Properties' indorsement. Under our ultimate resolution of the legal question presented, this fact is immaterial.

entirely from the application of the Texas UCC to the negotiable-instrument circumstances of this case. More particularly, the Gusma parties argue that the Texas Supreme Court case *McAllen Hospitals, L.P. v. State Farm County Mutual Insurance Co. of Texas*, 433 S.W.3d 535, 540 (Tex. 2014), stands for the proposition that the drawer of a negotiable instrument made jointly payable, non-alternatively to co-payees does not discharge the underlying obligation. The Gusma parties accurately recite the holding of this case. They then reason that, under *McAllen Hospitals*, Travelers' decision to pay the appraisal award with a check made jointly, but not alternatively, payable to Gusma Properties and Baca means Travelers did not discharge its obligation to pay the appraisal award under the Texas UCC. And, under the Gusma parties' theory, when Baca improperly negotiated the check and retained the funds, Gusma Properties did not receive the money and, therefore, is entitled to prompt payment penalties under the Prompt Payment provisions for the time period until Gusma Properties received those funds through settlement with the defendant Banks.

But Travelers correctly notes that *McAllen Hospitals* is not on point by its express language because the joint payees in that case were not in an agency relationship, as the joint payees are in this case. *Id.* at 540 n. 4 ("We do not address this holding's applicability to copayees in an agency relationship, as that scenario is not presented."). Travelers also correctly notes that McAllen Hospitals was not seeking prompt payment penalties as the Gusma parties do here; rather, the *McAllen Hospitals* court evaluated the intersection between the Texas UCC and the Hospital Lien Statute, Texas Property Code section 55.002. *Id.* at 538–41. Further, neither Travelers' liability on the underlying obligation nor its liability on the negotiable instrument are at issue in this case. Stated differently, allocation of responsibility between or among the parties to the instrument is not at issue because the defendant Banks paid the full amount of the negotiable instrument and the Gusma parties concede that the payment satisfies Travelers' obligation on the insurance policy and the negotiable instrument.

However, Travelers is wrong to suggest that the Texas UCC is not relevant to this dispute. Travelers elected to satisfy its obligations with a negotiable instrument, and therefore we must consider the impact of the complex statutory scheme of the Texas UCC on Travelers' prompt-payment obligations under the Prompt Payment provisions. *See Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 107 (Tex. 2004) (noting that the Texas UCC contains a "comprehensive and carefully considered allocation of responsibility among parties to banking relationships"); *cf. McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 759 (3d Cir. 1990) (holding that "[a]s part of an attempt to establish uniform rules governing the relationship between banks and their customers, the UCC allocates the losses caused by forged endorsements on negotiable instruments based on the relative responsibilities of the parties to the transaction" (citations omitted)). More specifically, we must determine whether the Texas UCC provisions analyzed in *McAllen Hospitals* displace the agency principles outlined above. *See* Tex. Bus. & Com. Code § 1.103(b) ("Unless displaced by the particular provisions of this title, the principles of law and equity, including . . . the law relevant to . . . principal and agent . . . shall supplement its provisions."); *see also 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 389–90 (Tex. 2011). As discussed below, we ultimately conclude that, under the facts of this case, the Texas UCC provisions concerning ne-

gotiable instruments made jointly but not alternatively payable to copayees do not displace well-established agency principles. *See* Tex. Bus. & Com. Code §§ 3.309, 3.110.

### B. Application

As we have outlined, none of the parties' cited authority is directly on point. Yet, that is not to say that we write on a clean slate regarding the relationship between the Prompt Payment provisions, agency principles, and the Texas UCC.

We begin by examining more deeply the teachings of *McAllen Hospitals* regarding negotiable instruments made payable jointly but not alternatively to copayees. We conclude that, under the *McAllen Hospitals* holding, Travelers constructively delivered a timely payment in full to Gusma Properties, a copayee, when it delivered the check to Baca, Gusma Properties' agent. We then determine that agency principles are not displaced by either the Prompt Payment provisions or section 3.309 of the Texas UCC. We finally conclude that Travelers' constructive delivery of the check to Gusma Properties' attorney/agent acting within the scope of his authority, when this action is evaluated under analogous prompt-payment authority, tolls prompt payment penalties as a matter of law.[5]

### 1. Under *McAllen Hospitals*, Travelers constructively delivered the check to Gusma Properties.

In *McAllen Hospitals*, McAllen Medical Center treated two patients who had been injured in an automobile accident. 433 S.W.3d at 537. The driver of the other vehicle was insured by State Farm. *Id.* To secure payment of the patients' hospital bills, the hospital obtained a hospital lien under ·Chapter 55 of the Texas Property Code against any insurance proceeds paid as a result of the accident. *Id.* at 537–38. After the patients sued the driver of the other vehicle, State Farm settled with the injured patients and paid them via negotiable instrument. *Id.* at 537. The copayees on the settlement check were the hospital and the patients. *Id.* State Farm named the payees on the check non-alternatively, that is, the patients "and" the hospital. *Id.* The patients negotiated the checks without the hospital's indorsement. *Id.* The hospital sued State Farm to enforce its statutory liens on the proceeds from the insureds' personal-injury settlement, and the hospital and State Farm filed competing motions for summary judgment. *Id.* State Farm asserted that it had met its obligation to pay the hospital under the Hospital Lien Statute[6] by making the · checks payable to the hospital as a copayee. *Id.* The trial court granted State Farm's summary judgment motion, and the court of appeals affirmed. *Id.*

The Texas Supreme Court unanimously reversed, holding, as outlined above, that State Farm did not discharge its obligation on the negotiable instrument or the underlying obligation. *Id.* at 540. In its analysis, the *McAllen Hospitals* court rejected decisions from lower Texas courts on analogous facts and instead adopted the reasoning of a decision from the Massachusetts Supreme Judicial Court that, because pay-

---

5. Because we determine Travelers is not liable for prompt payment penalties under the Insurance Code, we need not determine whether Travelers' constructive delivery of a negotiable instrument jointly but not alternatively payable to copayees Baca and Gusma Properties in an agency relationship, constitutes payment under section 3.309 of the Tex-

as UCC. The Gusma parties concede that Travelers' obligations on the appraisal award and the negotiable instrument have been satisfied and, therefore, the question left open in *McAllen Hospitals* is not presented here.

6. Tex. Prop. Code §§ 55.002–.008.

ment to one non-alternative copayee without the indorsement of the other is not payment to a "holder," it does not discharge the drawer of either its liability on the instrument or its underlying obligations. *Id.* at 540 (quoting *General Motors Acceptance Corp. v. Abington Casualty Ins. Co.*, 413 Mass. 583, 602 N.E.2d 1085, 1088 (1992) (hereinafter, *GMAC*)). The Massachusetts Supreme Judicial Court in *GMAC* held that Massachusetts' analogous UCC provision (Texas UCC section 3.110(d))[7] expressly prohibits discharge except by all payees: "If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." *GMAC*, 602 N.E.2d at 1088.

Applying this rationale, the Supreme Court of Texas concluded that the hospital's lien against the settlement proceeds was not discharged even though the patients received the full payment because the patients were not entitled to negotiate the check without the hospital's indorsement. *McAllen Hospitals*, 433 S.W.3d at 540–41. The policy underlying this interpretation of the applicable sections of article 3 of the Texas UCC is " '[t]o protect the rights of all joint payees as well as the integrity of the commercial paper itself.' " *Id.* at 540 (quoting *GMAC*, 602 N.E.2d at 1088). The *McAllen Hospitals* court joined the Massachusetts court in expressing concern that any other holding would provide " "[n]o assurance that all the joint payees

would receive payment" " and would dissolve any distinction between drafts made out to alternative copayees. *Id.* at 540 (quoting *GMAC*, 602 N.E.2d at 1088).

■ The Gusma parties rely on *McAllen Hospitals* for their argument that Travelers did not discharge its obligations with the negotiable instrument at issue, but they ignore the other significant holding in *McAllen Hospitals*: State Farm constructively delivered payment to *all* of the copayees on the negotiable instrument, even though these parties were not in an agency relationship. *Id.* at 539 (citing Tex. Bus. & Com. Code § 3.420(d) & cmt. 1).[8] As such, under the Texas UCC, Travelers constructively delivered the appraisal payment to Gusma Properties when it delivered the payment to Baca.

The Gusma parties do not argue otherwise, nor could they. Under the Texas UCC, "delivery" of an instrument is a "voluntary transfer of possession." Tex. Bus. & Com. Code § 1.201(b)(15). Had Gusma Properties not received constructive delivery of the check when Baca came into possession of the check, Gusma Properties could not have sued for conversion as it did. *See id.* § 3.420(a) (the payee of an instrument may not bring an action for conversion unless it directly or indirectly received delivery of the instrument, either itself or through an agent); *see also Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800, 804–06 (Tex. App.–Dallas

---

7. Section 3.110(d) states that "[i]f an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument [but if] an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." Tex. Bus. & Com. Code § 3.110.

8. Section 3.420 comment 1 notes that the principles of conversion apply where an instrument is payable to two persons and the two persons are not alternative payees because "neither payee acting without the consent of the other[ ] is a person entitled to enforce the instrument"; however "[d]elivery to an agent is delivery to the payee" and "delivery to one of the payees is deemed to be delivery to all of the payees." Tex. Bus. & Com. Code § 3.420 cmt. 1.

2006, no pet.) (holding that Texas UCC section 3.420 preempted a common-law conversion claim by a party who had not received "delivery" of the check because such parties are ineligible to bring such claims under the UCC).

## 2. Agency principles complement the applicable provisions of the Texas UCC and promote the purposes of the Prompt Payment provisions.

Although the Supreme Court of Texas did not address agency principles in its analysis in *McAllen Hospitals*, it has done so previously. The Texas Supreme Court has explained, regarding drawer liability in an agency circumstance, that " '[i]f either the drawer or payee must suffer because of the dishonesty of the agent, the one who designated [the agent] to receive the check and intrusted [the agent] with it should suffer, rather than the drawer, who had no voice in the selection of such agent, and who is in no way responsible for [the agent's] acts.' " *Strickland Transp. Co. v. First State Bank of Memphis*, 147 Tex. 193, 214 S.W.2d 934, 938 (1948) (quoting *McFadden v. Follrath*, 114 Minn. 85, 130 N.W. 542, 544 (1911)). In *Strickland*, Strickland's employee Akard was authorized to accept customers' checks payable to Strickland, but he was not authorized to indorse or cash those checks. *Id.* at 935. When Akard indorsed certain checks, negotiated them, and appropriated the funds, Strickland urged that the drawer was still liable to Strickland, also a payee. *Id.* at 936. The Texas Supreme Court disagreed, citing agency principles. *Id.* at 939 (noting that "the unfortunate position [Strickland] found itself in ... arises solely from the unfaithfulness of [Strickland]'s own agent").

Further, our court has considered the intersection of agency principles and the Texas UCC and held that sections 3.301 and 3.602 of the Texas UCC do not displace agency principles. *See Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 443 (Tex. App.–Houston [14th Dist.] 2003, no pet.) (concluding that common law principles of agency may allow the enforcement under the Texas UCC of a note by a payee not in possession of an original note). In *McElhenie*, we addressed whether a loan servicing agent had authority to collect final payment on a mortgage note. *Id.* at 443. The mortgagee, Aquaduct, argued that, under Article 3 of the Texas UCC, the loan servicing agent, Gibralter, could not have had authority to collect the loan payoff because the note was a negotiable instrument and Gibralter did not have actual physical possession of the note at the time of the full payment. *Id.* Specifically, "Aquaduct reason[ed] because a negotiable instrument is paid only to the extent payment is made to a person entitled to enforce the instrument, and a person entitled to enforce the instrument is normally only a person in possession of the instrument, that the UCC did not allow the McElhenies to make their final payment to Gibraltar." *Id.* (citing Tex. Bus. & Com. Code §§ 3.301, 3.602).[9]

This court rejected Aquaduct's argument because Gibraltar was Aquaduct's authorized agent. *Id.* at 443–44. We first determined that neither section 3.301 nor 3.602 of the Texas UCC displaced common-law agency principles. *Id.* at 443. We then concluded that the mortgagor's final payment to Gibraltar was "deemed to be payment to Aquaduct, a holder in possession of the negotiable instrument." *Id.*

---

**9.** Section 3.301 provides that a "person entitled to enforce" includes the holder of the instrument or a nonholder in possession of an instrument. Tex. Bus. & Com. Code § 3.301.

Section 3.602 states that an instrument is paid to the extent it is paid to a person entitled to enforce the instrument. *Id.* § 3.602(a).

That same principle applies here. The Gusma parties rely on section 3.309(a), which provides in pertinent part that "a person who is not in possession of an instrument is entitled to enforce the instrument if the person seeking to enforce the instrument has directly or indirectly acquired ownership of the instrument." Tex. Bus. & Com. Code § 3.309(a). But, as outlined above, Gusma Properties attained constructive possession of the instrument not only because Gusma Properties' authorized attorney received it, but also because their attorney, a co-payee, served as Gusma Properties' agent for purposes of delivery. *See McAllen Hospitals, L.P.*, 433 S.W.3d at 540; *see also Aquaduct*, 116 S.W.3d at 443.

In short, we conclude that the agency principles arising from the facts of this case are entirely consistent with section 3.309 of the Texas UCC and therefore supplementary.[10] Having determined that traditional agency principles are not displaced by section 3.309, we turn to the question of delay in payment under the Prompt Payment provisions.

**3. Travelers' timely and good faith constructive delivery of the full appraisal award to Gusma Properties' attorney/agent tolls prompt payment penalties.**

■ The Gusma parties' argument that prompt payment penalties attach despite payment if the insured does not receive the money finds no support in authority. No Texas court has held that prompt payment penalties accrue solely because the insured does not receive the payment directly. For example, an insurer who "pays" a claim by tendering the policy proceeds into the registry of a court and files an interpleader is not strictly liable for penalties even though the insured did not receive the insurance proceeds. Specifically,

---

10. In fact, we cannot ignore agency principles in this context. The Gusma parties' interpretation of the Prompt Payment provisions to reward them for lost use of money not received due to conversion conflicts with the Texas UCC, as noted by our sister court in *AMX Enterprises, Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207–08 ((Tex. App.–Houston [1st Dist.] 2006, pet. denied). AMX entered into a contract to perform mold remediation on a mortgagors' home. *See id.* at 205. The mortgagors' insurance company issued checks payable jointly and non-alternatively to the mortgagors, their mortgage company, and AMX. *Id.* The mortgagors indorsed and forwarded the checks to their mortgage company with instructions to indorse the checks and forward them to AMX. *Id.* Instead, the mortgage company indorsed the checks and deposited them without the final indorsement from AMX, one of the copayees. *Id.* AMX later filed suit against the bank that processed the checks, the mortgage company, and the mortgagors. *Id.* While the suit was pending, the mortgage company returned the money it had received through the insurance checks to the mortgagors. *Id.* The mortgagors then settled with AMX for the full mold remediation con-tract price. *Id.* AMX nonsuited its claims against them, and the mortgagors assigned their claims against the mortgage company and the bank to AMX. *Id.* AMX continued its suit against the bank and the mortgage company; the bank obtained summary judgment in its favor and AMX nonsuited its claims against the mortgage company. *Id.*

On appeal, AMX asserted, *inter alia*, that it had never been compensated for its "loss-of-use" damages pursuant to its statutory conversion claim under section 3.420 of the UCC. *Id.* at 208. The First Court of Appeals rejected AMX's argument, holding that section 3.420 does not permit recovery of these types of damages. *See id.* Indeed, the First Court of Appeals noted other sections of the UCC that explicitly provide for recovery of loss-of-interest damages; thus, "the drafters knew how to allow for a plaintiff to recover additional damages beyond the face value of the check." *Id.* at 208–09. Likewise, in this case, the complex apportionment of responsibility for a converted instrument embodied in the Texas UCC would be thwarted by awarding additional damages outside of the UCC's chapter 3 scheme.

in *State Farm Life Insurance Co. v. Martinez*, 216 S.W.3d 799 (Tex. 2007), the Texas Supreme Court analyzed whether an insurance company delays payment within the meaning of the Act by interpleading insurance funds into the registry of the court.

In that case, after Ed Martinez died, State Farm owed benefits on his $500,000 life insurance policy. *Id.* at 801. Ed's ex-wife, listed as the beneficiary, made a claim. *Id.* Both Ed's surviving wife and his daughter also claimed the benefits. *Id.* Ultimately, State Farm interpleaded the funds. *Id.* After the trial court granted summary judgment in favor of Ed's surviving wife, she moved for Prompt Payment penalties alleging that her claim had not been timely paid; the trial court agreed and awarded these penalties, and the court of appeals affirmed. *Id.* at 801–02.

■ In reviewing the case, the Texas Supreme Court first determined that, in light of the legislative changes to the Prompt Payment provisions, "continuing to recognize an interpleader exception to the prompt payment statute would frustrate its purpose in some cases, while removing the exception would allow the purposes of both the statute and interpleader to be fulfilled." *Id.* at 805. But, the *Martinez* court explained that "[w]hile assessing penalties before interpleader is consistent with both the statutory and common-law rules, assessing them thereafter is not." *Id.* at 805–06. Thus, once an insurer interpleads the disputed funds, prompt payment penalties are tolled. *See id.* But, according to the *Martinez* court, some interpleader actions *do* constitute a delay in payment. *Id.* at 807. Specifically, the insur-

er must act in good faith [11] in filing the interpleader action; otherwise, interpleader is a delay in payment subject to Prompt Payment penalties. *See id.* (stating an "interpleader [that] merely delays payment . . . should not toll the statute's penalties" and "only the absence of rival claims justifies continuing statutory penalties after interpleader occurs"); *see also Prudential Ins. Co. v. Durante*, 443 S.W.3d 499, 511–12 (Tex. App.–El Paso 2014, pet. denied) (holding that, consistent with *Martinez*, only an insurer who *timely* tenders the entire sum owing into the registry of the court does not owe penalties under the Prompt Payment Act). The Prompt Payment provisions do not assign penalties simply because the insured has not received the money, and tender of the funds is necessary to trigger tolling of the penalties.

■ Similarly, the Prompt Payment provisions do not assign penalties simply because the insurer declines to pay or tenders the proceeds to a neutral if the insurer timely invokes the appraisal process. Stated differently, an insurer does not delay payment of a claim within the meaning of the Prompt Payment provisions by withholding disputed payments pending appraisal under an insurance policy. *See, e.g., Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 345 (Tex. App.–Corpus Christi 2004, pet. denied) (mem. op.) (rejecting the policyholders' argument that "because of the appraisal process, they were not actually paid until after State Farm paid them the difference between the first payment and the appraisal award, which occurred long after the sixty-day statutory limit"); *accord In re Slavon-*

---

11. Although we agree with the Gusma parties that an insurer's good-faith rejection of a claim will not shield it from penalties, *cf. Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997), an insurer's good faith in administering or paying a claim is relevant in assessing delay and awarding penalties. *See Martinez*, 216 S.W.3d at 807–08.

*ic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563–64 (Tex. App.–Houston [14th Dist.] 2010, orig. proceeding) (listing cases that support the proposition that "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law"). These cases cannot be correct if, as the Gusma parties argue, failure to discharge the underlying obligation within the statutory time period is a *per se* delay in payment under the Prompt Payment provisions.

We also note that it would be incongruous to ignore the attorney-client relationship between Gusma Properties and Baca for purposes of Travelers' discharging its prompt-payment obligation when Texas authority already acknowledges the indivisible nature of the attorney and client for purposes of the insured meeting its duties under the Prompt Payment provisions. Specifically, in *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, the Tyler Court of Appeals rejected a construction of a provision in a prior version of the statute that would disqualify a claim presentment made by the insured's attorney rather than the insured directly. 991 S.W.2d 467, 473 (Tex. App.–Tyler 1999, pet. denied) (holding that "claimant" under the predecessor to the Prompt Payment provisions includes "the insured's attorney because 'what a principal does through an agent, he does himself' "). Simply put, Texas courts already complement the Prompt Payment provisions with agency principles. *See, e.g.*, *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 18 (Tex. 2007) (holding that a defense benefit is covered by the Act because "the payee will always be either an insured or the insured's attorney, and *for purposes of the prompt-payment statute, no reason supports distinguishing between the two*" (emphasis added)). In light of the reasoning of *Lamar Homes* and *Dunn*, it is more appropriate to treat Gusma Properties and its counsel as one and the same for purposes of discharging Travelers' prompt-payment obligations under the Prompt Payment provisions.

Moreover, we are to construe the Prompt Payment provisions liberally to promote the underlying statutory policy favoring prompt payment of claims. *See* Tex. Ins. Code § 542.054 ("This chapter shall be liberally construed to promote the prompt payment of insurance claims."); *Martinez*, 216 S.W.3d at 803. Yet, we do so mindful that the plain language of the Prompt Payment provisions forbid a "delay" in payment; they do not, as a bright line, affix strict liability penalties for failure to pay. The construction of the Prompt Payment provisions the Gusma parties seek does not promote the prompt payment of claims; rather, it undermines prompt payment by creating uncertainty and hesitation for insurers in making payment. For instance, the Gusma parties do not argue that Baca's conversion of the check given for the appraisal award was somehow foreseeable to Travelers. Nor do they argue that Travelers' making the check payable to Baca in trust for Gusma Properties would have prevented Baca's conversion. The Gusma parties simply argue that Travelers had a Texas UCC remedy to avoid liability: to not make the check jointly and non-alternatively payable.[12] However, drawing the check as

---

12. The Gusma parties' reliance on *ViewPoint Bank v. Allied Property & Casualty Ins. Co.* is misplaced. 439 S.W.3d 626 (Tex. App.–Dallas 2014, pet. denied). In that case, ViewPoint Bank was a mortgage holder and loss-payee on the policy for Optimum Deerbrook LLC's property, which was insured by Allied. *Id.* at 628. Optimum's property was damaged during Hurricane Ike; Allied tendered insurance checks jointly payable to Optimum and View-

Travelers did serves to protect insureds in Gusma Properties' position by requiring their indorsements before proper negotiation. *See, e.g., McAllen Hospitals*, 433 S.W.3d at 540–41.

For the foregoing reasons, we overrule the Gusma parties' first and third issues.[13]

### III. CONCLUSION

We affirm the trial court's judgment.

Point. *Id.* Optimum indorsed the checks and deposited them to its bank account without ViewPoint's indorsement. *Id.* at 628–29. Importantly, however, Optimum was *not* the agent of ViewPoint, as Baca was the agent and attorney for Gusma Properties. The agency relationship present here—and absent in *ViewPoint*—alone distinguishes that case.

13. In their second issue, the Gusma parties challenge the denial of their motion for partial summary judgment on their Prompt Payment provisions claim. In this motion the Gusma parties did not seek a final judgment. *See Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 664 (Tex. App.–Houston [14th Dist.] 2013, pet. denied) (noting that courts may review the denial of a cross-motion for summary judgment and render judgment on that motion only in certain circumstances, including when the movant in the cross-motion sought a final judgment). The Gusma parties did not seek summary judgment as to any declaratory-judgment claim. *See id.* (noting that courts may review the denial of a cross-motion for summary judgment and render judgment on that motion under an exception involving claims for declaratory relief). Therefore, we may only review the denial of this motion for partial summary judgment to the extent the Gusma parties sought summary judgment on an issue Travelers addressed in its summary-judgment motion. *See Frontier Logistics, L.P.*, 417 S.W.3d at 664 (concluding that courts may review the denial of a cross-motion for summary judgment and render judgment on that motion when the movant in the cross-motion sought summary judgment on the same issue that was addressed in the other motion). To the extent the Gusma parties sought summary judgment on an issue addressed in Travelers' motion, the trial court did not err in denying the motion for the reasons discussed above. Accordingly, we overrule the Gusma parties' second issue.