

# NUMBER 13-18-00266-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JEFFREY R. VAUGHAN,                                      **Appellant,**

**v.**

RAUL MEDINA AND LAW OFFICE
OF RAUL MEDINA, P.C.,                                  **Appellees.**

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION
### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Benavides

Appellant Jeffrey Vaughan appeals a jury verdict that denied him offsets against a $300,000 promissory note (Note) to appellee Raul Medina and awarded Medina attorney's fees. By eleven issues that we have grouped into six, Vaughan argues that: (1) Medina did not have standing to collect on the Note because he failed join his co-maker Pierre Newkirk; (2) Vaughan proved as a matter of law that he established the elements

of his quantum meruit claim and the jury's failure to find in his favor was against the great weight and preponderance of the evidence; (3) Vaughan conclusively established that Medina failed to mitigate his damages by failing to use ordinary care in handling the cases that collateralized the Note and the jury's failure to find in Vaughan's favor was against the great weight and preponderance of the evidence; (4) the trial court erred by failing to require the expert witnesses on attorney's fees to segregate fees; (5) the trial court erred by failing to make a finding on Vaughan's attorney's fees for usury; and (6) the trial court erred by signing a judgment that included usurious interest. We affirm in part and reverse and remand in part.

## I.  BACKGROUND

Medina and Vaughan are both lawyers and former friends. On April 10, 2012. Newkirk and Medina loaned Vaughan $300,000. Medina and Newkirk are friends who also do business together. Newkirk borrowed some of the money from his mother-in-law and used some of his own money to give to Medina to loan to Vaughan. Medina was also very close friends with Vaughan's law partner, Javier Villalobos. Vaughan represented to Medina that he owed the Internal Revenue Service (IRS) $300,000 and he had an opportunity to take a job in Houston, but he feared the opportunity would fall through if the Houston law firm found out about his IRS debt. Vaughan told Medina that his firm had 148 Avandia (pharmaceutical personal injury) cases settling and he expected payment by November 2012.

The Note was payable to Medina and Newkirk and was due on December 31, 2012 in a lump sum of $357,000. According to Medina, Vaughan drafted the Note with no input

2

from him. Newkirk testified he had no input into the terms. Vaughan testified that he thought Medina and he worked out the terms and he may have had someone type it up. The Note is only signed by Vaughan; neither Newkirk nor Medina signed it. In the Note Vaughan assigned his personal interest in the following cases:

1) Villalobos & Vaughan, PLLC—Avandia Settlement of 148 Cases,

2) Cause No. C-2864-10-A; *Agustin Garcia v. Guillermo Pechero, M.D.*, et. al.; in the 92nd Judicial District Court of Hidalgo County, Texas.

3) Cause No. CL-10-2331-A; *Agustin Garcia, et. al. v. Guillermo Pechero, M.D., et. al.*; in the County Court at Law No. 1 of Hidalgo County, Texas.

4) Cause No. 2008-11-6210-D; *Jose Loya, et. al. v. International Marine, LLC*; in the 103rd Judicial District Court of Cameron County, Texas.

The Note further recites that Vaughan agrees to "remain fully bound until this note shall be fully paid and waive demand, presentment and protest and all notices hereto . . . ." Vaughan did not pay the Note on December 31, 2012. He made a $10,000 payment in December 2013 and a $25,000 payment in December 2014, both payable to Medina.

Vaughan took the Houston job and moved. He remained in touch with his friends and former partner and remained involved with his cases.

The Avandia cases did not fund in November 2012, and it was later determined that they did not qualify as part of the global settlement. At time of trial, Vaughan admitted that his Avandia cases were never accepted into the settlement class. The International Marine case settled favorably and Vaughan's share of the fees was approximately $122,000, however, Vaughan used only $25,000 from those funds to make a Note payment in December 2014. The remainder of those funds were used to pay other firm

3

debts.

No monies were recovered on either of the Garcia cases. By 2015, Medina was looking to Vaughan for help. Medina was paying interest to Newkirk based on their separate agreement and he hoped that Vaughan could get a bank loan to repay Newkirk.

Vaughan filed suit in Harris County against Newkirk and Medina in early October 2015. Vaughan alleged that Medina's negligence rendered the collateral, two commercial cases, valueless, and that Medina refused to pay him for 300 hours of work that Vaughan performed for Medina that should have been credited against the Note. He also claimed that the Note was usurious and Vaughan sought penalties, court costs, and attorney's fees.

Before serving Medina and Newkirk with the Harris County lawsuit, on October 23, 2015, Vaughan, through his counsel George Bishop, sent letters to Newkirk and to Medina advising them that the interest rate on the Note was usurious. Bishop further advised them he had charged Vaughan $5,400 in attorney's fees consisting of thirteen and a half hours at $400 per hour to prepare the letter and prepare an original petition. Newkirk turned his letter over to Medina to handle. Medina wrote Bishop a letter dated November 9, 2015 in which Medina responded that he relied on Vaughan to prepare a legally compliant note and he would accept non-usurious interest from the date of execution. Medina's letter also stated: "Be advised this note was assigned to me shortly after execution."

Before he learned he had been sued Harris County, Medina filed suit on the Note for breach of contract in Hidalgo County. Medina and Newkirk filed motions to transfer

4

venue from Harris County to Hidalgo County that were granted. The transferred case was ultimately consolidated with Medina's original suit in Hidalgo County.

The case went to trial in 2018. During trial, Vaughan and Newkirk non-suited one another with prejudice. Medina and Vaughan entered into a stipulation that Vaughan breached the Note by failing to pay, other than the $35,000 credit. The remaining issues, Vaughan's defenses and offsets, were submitted to the jury. It is from the jury verdict that Vaughan appeals.

## II. JURY CHARGE

The jury charge consisted of seven questions on Vaughan's offset or defensive issues and three questions on attorneys' fees as shown below:

### QUESTION 1

Did Raul Medina fail to exercise reasonable care to preserve the collateral in the promissory note which proximately caused damages to Jeff Vaughan?

A. The "Land Case" involving Agustin Garcia then pending in the 92nd District Court of Hidalgo County.

Answer: no

B. The "Severed Case" involving Agustin Garcia then pending in the 92nd District Court of Hidalgo County.

Answer: no

C. The "Leaps & Bounds" case then pending in the 13th Court of Appeals of Texas.

Answer: no

If you answered "Yes" to any part of Question 1 then answer the following question. Otherwise, go to Question 3.

**QUESTION 2**

What do you find to be the value of the collateral listed in the Note at the time they were assigned to Raul Medina?

Answer separately in dollars and cents for damages to each, if any.

A. The value of the "Land Case" then pending in the 92nd District Court of Hidalgo County.

Answer: _____

B. The value of the "Severed Case" then pending in the 92nd District Court of Hidalgo County.

Answer: _____

C. The value of the "Leaps & Bounds" case then pending in the 13th Court of Appeals of Texas.

Answer: _____

**QUESTION 5**

Did Jeff Vaughan perform compensable legal work for Raul Medina for which he was not compensated?

Answer "Yes" or "No."

Answer: no

A person provides compensable legal work if he renders valuable services to another person which are accepted and used and that result in a benefit; and, under the circumstances, the person receiving the services was reasonably notified that the person providing the services expected to be compensated for services.

If you answered "Yes" to Question 5 then answer the following question. Otherwise, do not answer the following question.

**QUESTION 6**

What is the reasonable value of such compensable work at the time and place it was performed?

Answer in dollars and cents, if any.

Answer: _____

## QUESTION 7

Did Raul Medina exercise exclusive control of the Agustin Garcia Cases Collateral?

Answer "Yes" or "No"

Answer: No

You are instructed that a secured party has control of a commodity contract if:

> A) the secured party is the commodity intermediary with which the commodity contract is carried; or
>
> B) the commodity customer, secured party, and commodity intermediary have agreed that the commodity intermediary will apply any value distributed on account of the commodity contract as directed by the secured party without further consent by the commodity customer.

The remaining jury questions addressed attorneys' fees. The jury found a reasonable fee for the necessary services of Jeff Vaughan's attorney to be $163,875 for services in the trial court. The jury found that the reasonable fee for the necessary services of Raul Medina and the Law Offices of Raul Medina, P.C. was $116,490 and for his trial counsel Mario Rodriguez, for failure to pay the Note was $45,825 through trial. Based upon the jury's verdict, the trial court awarded Medina attorney's fees.

## III. WAS MEDINA REQUIRED TO JOIN NEWKIRK TO COLLECT ON THE NOTE

By his first issue, Vaughan argues that Medina did not have the individual capacity to sue to collect the Note because Medina and Newkirk were both makers of the Note. *See* TEX. BUS. & COM. CODE ANN. § 3.110; *McAllen Hosps., L.P. v. State Farm Cty. Mut.*

7

*Ins.*, 433 S.W.3d 535, 538–39 (Tex. 2014). Medina argued in response that Newkirk orally assigned his interest in the Note to Medina shortly after the Note was executed. Vaughan was notified of the assignment in writing on November 9, 2015, shortly after he filed suit. The trial court refused to grant Vaughan's request for instructed verdict on this issue.

Vaughan relies on § 3.110 of the Business and Commerce Code which states:

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.

TEX. BUS. & COM. CODE ANN. § 3.110(d). According to Vaughan, because the Note is payable to both Medina and Newkirk, Medina alone may not enforce it. However, Vaughan disregards the evidence of assignment at trial and misreads the case on which he relies. *See McAllen Hosps., L.P.*, 433 S.W.3d at 539. In *McAllen Hosps* , the court stated, consistent with § 3.110, that when there are two joint payees, that endorsement by only one payee does not release the maker from liability for the debt. *See id.* The court did not state that one payee could not sue to enforce the debt. In that case, State Farm issued a check jointly payable to plaintiffs for their injuries arising out of an auto collision and to the hospital in payment of the hospital lien. *Id.* at 537. The plaintiffs cashed the check without the hospital's endorsement. *See id.* The hospital sued State Farm on its lien to recover its share of the proceeds. *Id.* The court held that State Farm was still liable to the hospital. *Id.*

If both payees are not joined in the same suit, there is a risk of incomplete relief to the liable party since both are owed. *See id.* But here, Newkirk assigned his right of

8

recovery to Medina. Accordingly, Vaughan is not exposed to such a risk.[1] As a result, there is no defect of capacity and the trial court properly denied Vaughan's motion for instructed verdict.

We overrule Vaughan's first issue.

## IV.   QUANTUM MERUIT

By issues two, three, and four, Vaughan argues that as a matter of law, he established that he performed compensable legal services for Medina on the Loa case[2] at Medina's request and that Medina agreed to pay him. The jury found that he did not. Vaughan further argues that he conclusively established the value of those services at $24,000.

## A.    Standard of Review

**"**When a party attacks the legal sufficiency of an adverse finding on an issue on which []he has the burden of proof, []he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). If we do not find evidence to support the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* "The point of error should be sustained only if the contrary proposition is conclusively established." *Id.* In performing a legal sufficiency review, we must first examine the record for evidence that a reasonable

---

[1] We also note that the two checks that Vaughan wrote to pay the debt on the Note before suit was filed were written to Medina. Furthermore, Vaughan and Newkirk nonsuited each other with prejudice before the case went to the jury.

[2] The Loa case was a wrongful death case in which Medina represented the family of a young man who died after receiving injuries while playing soccer. It is a separate case from the Loya case mentioned in the Note.

factfinder would credit as supporting the finding while ignoring all evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id.* at 816.

**B.     Applicable Law**

**"**Quantum meruit is an equitable remedy that is 'based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). The purpose of this common law doctrine is to prevent a party from being "unjustly enriched" by "retain[ing] the benefits of the    . performance without paying anything in return." *Id.* (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). The elements of quantum meruit are: (1) valuable services were rendered; (2) for the person sought to be charged; (3) those services were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services was expecting to be paid by the person sought to be charged. *Id.* (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

**C.     Discussion**

Vaughan proceeded at trial on two theories regarding work he performed for Medina: breach of an oral contract and quantum meruit. He abandoned his breach of oral contract claim during the jury charge conference and requested that the trial court submit only his quantum meruit claim to the jury.

10

Javier Villalobos, Medina, and Vaughan testified that before the Note was made, they worked on cases together, were friends, shared information and generally helped each other with names of experts, sample pleadings, names of other attorneys for local counsel, and they appeared for one another when necessary. Generally, no payment was expected. When payment was discussed or expected, they would put it in writing.

Medina testified that the work that Vaughan did after April 2012, except for the Loa case, was of the same type the group of lawyers had always done for each other and was on cases in which Vaughan's former firm stood to gain a substantial part of the contingent fee. Some of the evidence consisted of years of text messages between Medina and Vaughan as well as documents Vaughan testified he prepared for Medina in some of the cases referenced, including the Loa case.[3] Although Medina admitted that he agreed to pay Vaughan on the Loa case after it settled, Medina testified that any payment would have been on a contingent fee basis. Medina testified as follows:

> On the Loa Case, if you see my text message, I agreed to cut him in. In that offer I made, it's in the discovery where I would give him 10 percent of the attorney's fees I collected. I have never shied away from giving him money on the Loa Case. I'm a man of my word. That's what I said in the text and that's what I'm willing to do.

Medina denied that he agreed to pay Vaughan for work on any other case. According to Medina, the first time he found out that Vaughan expected to be paid on any case other than Loa was after Vaughan filed suit in Harris County in 2015.

---

[3] Vaughan testified he prepared the following documents in the Loa case: Plaintiffs' response to Dr. Velasquez's motion to dismiss and sever and motion to overrule defendants' objections to Chapter 74 expert report and motion for determination of adequacy of chapter 74 expert report, Plaintiffs' first requests for production to Dr. Velasquez, Plaintiffs' first interrogatories to Dr. Velasquez, draft of a report for the expert physician, notice letters to the hospitals and doctors pursuant to chapter 74, a draft of plaintiffs' original petition, and a proposed settlement letter.

Vaughan testified that after he failed to pay the Note on the due date, Medina started asking him to do legal work to offset the Note, but Vaughan could not point to a single text message, email, or other writing that evidenced an agreement that Vaughan would be paid for work to be offset against the Note. Vaughan prepared a trial exhibit that included hours worked on three other cases for a total of 100.5 hours, most of which he attributed to the Loa case. Vaughan testified during the trial that Medina testified under oath (in an unspecified matter) that he agreed to pay Vaughan in the Loa case. Vaughan believed the Loa case was settled in 2016. In one text message to Vaughan dated April 9, 2015, Medina stated, "Thanks, I'll hook up when we settle." Vaughan testified that the text meant that Medina agreed to pay him on an hourly basis for the time Vaughan spent on the case. Vaughan admitted that he did not bill Medina for work in the Loa case and they had not agreed on a specific hourly rate for his work on the case, but Medina knew that his usual rate was between $250 and $400 per hour.

Vaughan asserts that he conclusively established the elements of his quantum meruit claim as to the Loa case. In light of Medina's admission that he agreed to pay Vaughan for work on the Loa case as part of his contingency fee, Vaughan has established that the jury's answer to Question 5 is conclusively established to be yes, rather than no. Vaughan also produced some evidence of damages that was contradicted by Medina's testimony. The question of damages is one that must be resolved by the fact-finder. Because the jury did not answer Question 6, this portion of the case must be remanded to determine the amount of damages.

12

We sustain Vaughan's second, third, and fourth issues.

## V.    FAILURE TO MITIGATE DAMAGES

Vaughan argued throughout the case that if Medina had properly handled the Garcia cases listed in the Note, Medina would have received fees that would have covered the Note. However, the Land case was not fully developed at the time Medina made an appearance and the Pecheros had not yet asserted counterclaims. Garcia also had other litigation against the Pecheros that Garcia "inherited." By Vaughan's fifth, sixth, seventh, and eighth issues, he attacks the jury's failure to find that Medina failed to exercise reasonable care to preserve the collateral which proximately caused damages to Vaughan in Jury Question One. Vaughan alleged that if Medina had adequately represented Garcia on the collateral, his fees would have covered the Note and Medina's failure to properly represent Garcia thus was a failure to mitigate his damages. Vaughan also challenges the jury's failure to find that Medina failed to mitigate his damages in Question Three. Vaughan argues that the jury's answers to Questions One and Three were against the great weight and preponderance of the evidence.

## A.    Standard of Review

We use the same standard of review stated in Part III(A).

## B.    Background

The Note listed three cases in addition to the Avandia cases, two are at issue here. Both involve Gus Garcia and the Doctors Pechero. Garcia worked for the Pecheros, orthopedic surgeons in McAllen, who were involved in a number of different businesses.

13

### 1. Leaps & Bounds Pediatric Rehabilitation Center, Inc.

This is the second Garcia case listed on the Note by Vaughan. Vaughan and his firm filed suit in 2010 on behalf of Ronald Jackson and Garcia against Dr. Guillermo Pechero seeking a temporary restraining order, a temporary injunction, and a permanent injunction. Jackson and Garcia alleged that they and Pechero were the owners of Leaps & Bounds which was formed in 2003 and that Pechero was taking actions against the corporation's best interests, including removing funds from their corporate account that made it impossible to make payroll or pay their rent. In March 2012, Medina filed a motion to substitute counsel seeking to replace Vaughan with Medina and Jesus Villalobos. On March 14, 2012, the trial court signed a partial summary judgment in favor of Jackson for $376,250.00. A final judgment was signed in May 2012 that awarded the summary judgment damages and $87,500.00 attorneys' fees through trial, and contingent appellate fees to Jackson and Garcia. Pechero appealed. While the appeal was pending, the parties settled their disputes globally and the appeal was dismissed.

### 2. The Land Case

The other Garcia case listed as collateral on the Note was the Land case. The Pecheros were involved in thirteen land development projects. Garcia assisted the Pecheros with selecting properties and working on the developments while he was an employee of the Pecheros. According to Vaughan, Garcia told him that he had a recording of one of the Pecheros promising Garcia a five percent bonus of the development value. Vaughan filed suit against the Pecheros to recover the bonus. Vaughan withdrew as counsel when he went to Houston and Medina substituted.

According to Medina's testimony, Garcia told him that the promised bonus was five percent of the profits, a much smaller amount. In addition, although Vaughan had hired an expert to evaluate the developments, he had not paid the expert who refused to write a report until he was paid. Medina paid the expert, in part, $45,000 to obtain the report which documented an approximately $18.2 million profit, of which five percent would be $910,000. The Pecheros asserted numerous claims against Garcia including fraud and breach of fiduciary duty. Medina obtained a severance of the Pecheros' counter claims into a separate action in late 2012. The Land case was never tried but was settled as part of the global settlement between the parties in 2015.

### 3. Nolana Open MRI Center, Inc.

Villalobos & Vaughan represented Garcia in litigation against the Pecheros over Nolana Open MRI Center, Inc. The Pecheros opened and operated Nolana before selling it to Joe Castro and to Garcia. Litigation was commenced in February 2011. In February 2012, Javier Villalobos and the Law Office of Javier Villalobos, P.C. filed a motion for withdrawal of counsel based on a conflict of interest. The docket sheet does not reflect that Vaughan ever filed a motion to withdraw as counsel.

According to Medina, Garcia came to him shortly before trial and asked him for help with the case which involved his affirmative claims and Pecheros' counterclaims. Medina entered the case on April 16, 2013, along with Jesus Villalobos and asked the trial court for a brief continuance of the trial date to allow them to prepare for trial. Trial had been set for April 1, 2013 but was re-set for April 18, 2013. On April 15, 2013, the defendants filed a motion to show authority on the ground that Garcia alone could not hire

15

counsel and there was no agreement between Castro and Garcia, the fifty-percent owners, to hire counsel. The motion also argued that Nolana was not entitled to litigate its claims because it had lost its corporate privileges in the State of Texas.

The morning of the pretrial conference and the day of trial, April 18, 2013, Medina and Jesus advised the trial court that the transfer documents did not include Garcia's name and they withdrew from representing him. The trial court granted the defendants a default judgment against Nolana in the amount of $2.3 million. The judgment included exemplary damages. Vaughan argued in the trial of this case that the default judgment was Medina's fault because Medina withdrew the morning of trial. Vaughan further argued that the default judgment should have and could have been set aside but was not because Medina did not use the tools at his disposal to do so. Although Medina ultimately filed a restricted appeal, the court of appeals dismissed the appeal for want of jurisdiction

### 4. Defense of Garcia

The Pecheros raised numerous counterclaims against Garcia in the Land case which were severed in November 2012 at Medina's request. Medina defended Garcia in the "severed case." Medina filed two no-evidence motions for summary judgment on the Pecheros' counterclaims in January 2013 that were not set for hearing. Trial was scheduled for June 2014, but the parties filed an agreed motion for continuance. Trial was rescheduled for November 12, 2014. On November 11, 2014, Medina filed a motion for leave to file an amended answer that would raise the defense of limitations. The trial court granted the motion. The Pecheros opposed the granting of the motion for leave and the morning of trial, the trial court reversed its decision and denied the motion for leave and

16

denied Medina's motion for continuance on November 12, 2014. The jury was selected and trial resumed on November 20, 2014. A verdict was returned in favor of the Pecheros, but the trial court set it aside and granted a new trial on March 20, 2015. According to Vaughan, Medina mishandled the defense, the counterclaims were barred by limitations, and if medina had set the motions for summary judgment, they would have been granted. But for Medina's failures, no judgment would have been entered against Garcia.

In June 2014, Maple Star Orthopedics separately sued Garcia as an owner of Nolana for claims related to those in the original Nolana case. That case was assigned to the 93rd District Court. Maple Star sought damages in excess of $1,000,000 and punitive damages. It accused Garcia of fraud, among other things.

### 5. The Mediation

The Pecheros and Garcia held a successful global mediation to settle all the litigation between them in March 2015. The parties agreed to resolve the litigation between them that had resulted in judgment for Garcia in the Leaps and Bounds case and a judgment against him in the severed case and in the Nolana case. The settlement agreement provided that both sides would walk away with nothing.

During the mediation, Medina left for a couple of hours. Vaughan argued that Medina abandoned Garcia during mediation and that the Pecheros took advantage of him while he was unrepresented by counsel to settle all of the litigation without any payment to Garcia. However, Garcia and Medina testified that the settlement was already agreed to before Medina left and the papers were being drawn up while Medina was gone. Garcia denied that Medina's absence prejudiced him. Garcia further testified that settlement was

his decision alone to ensure that he was not exposed to any liability arising from the Nolana and severed cases. Garcia's testimony was supported by a contemporaneous email Garcia wrote to Bishop, Medina, Jesus, and Vaughan dated March 5, 2015, in response to the email Bishop wrote to Medina blaming Medina for the loss of value of all of the various Garcia cases. Bishop valued the land cases at $1 million in that email.

### 6. The Jury

Although Vaughan had the burden to demonstrate that the evidence conclusively established his claims, he failed to do so. At best, his evidence supported some of his claims but not others and other evidence directly contradicted his claims. After hearing nearly two weeks of conflicting and contradictory evidence, the jury chose not to believe Vaughan and his attorney Bishop's narrative regarding the collateral and mitigation of damages. We must assume that jurors resolved all credibility issues in favor of the verdict, if reasonable jurors could do so and we may not second guess their decisions. *City of Keller*, 168 S.W.3d at 819.

We overrule Vaughan's fifth, sixth, seventh and eighth issues.

### VI.   ATTORNEY'S FEES

By his ninth issue, Vaughan argues that Medina failed to segregate his attorneys' fees between those fees incurred defending against Vaughan's affirmative claims and claims for offsets and Medina's efforts to enforce the Note, Medina's (unsuccessful) efforts to disqualify Vaughan's trial counsel, and fees incurred while Medina represented Newkirk. According to Vaughan, the jury improperly awarded fees for all of it.

Medina's Eighth Amended Petition sought recovery against Vaughan for breach of

18

contract, fraudulent inducement, and negligent misrepresentation. Additionally, Medina pleaded that he cured Vaughan's claim of usury and pleaded defenses against Vaughan's claims against him which were intended to preclude Vaughan's payment of the Note.

## A. Standard of Review

Medina sought attorneys' fees for breach of contract. Section 38.001 provides for recovery of reasonable attorney's fees for breach of contract against a person or corporation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. It is presumed that the usual and customary fees for a claim of the type presented are reasonable. *See id.* § 38.003. We review the award of attorney's fees for legal sufficiency. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019).

Most recently in *Rohrmoos Venture*, the supreme court held that that sufficient evidence of attorneys' fees must include "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* To recover attorney's fees, the prevailing party is required to segregate work relating to recoverable and non-recoverable claims. *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006)). An exception to the segregation rule exists only when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible. *Id.* But "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated."

19

*Chapa*, 212 S.W.3d at 313–14. "For example, to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, res judicata, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary." *Id.* at 314.

## B.    Discussion

Medina, on behalf of his law firm, and his trial counsel each testified regarding the hours they spent, their experience, that their time was reasonable and necessary to prepare and defend the contract case, that they had been licensed more than twenty-five years, and that a reasonable hourly rate for their services was $300 per hour. They each submitted an itemized log of daily activities on the case showing the time each of them spent. Vaughan objected during Medina's testimony that he had not segregated his time between defending against Vaughan's claims and pursuing his own breach of contract case. Vaughan made the same objection during trial counsel's testimony.

At the time of trial, Vaughan was the plaintiff who asserted affirmative claims against Medina for: negligent destruction of collateral, usury, quantum meruit, and breach of oral contract for off-setting attorney's fees. Each of the claims against Medina was designed to offset any monies Vaughan owed Medina under the Note. Medina, as the defendant and counter-plaintiff, asserted defenses to Vaughan's claims and affirmative claims for breach of contract. Medina was entitled to recover attorneys' fees for time spent defending against Vaughan's affirmative claims to collect on the Note which did not have to be segregated. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (holding that fees incurred in successfully defending against counterclaim in order to collect full amount

20

of note need not be segregated); *Chapa*, 212 S.W.3d at 313; *Anglo-Dutch Petroleum Intern., Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 634 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding that "to prove their entitlement to recover for Anglo–Dutch's breach of the investment agreements, the release investors had to overcome Anglo–Dutch's counterclaims. Attorneys' fees incurred to defeat a counterclaim that must be overcome to recover fully on a contract need not be segregated.").

Vaughan also challenged the time Medina spent defending Newkirk from most of the same defensive claims he brought against Medina. According to Medina and Newkirk, Newkirk assigned his interest in the Note to Medina. It was in Medina's best interest to ensure that nothing occurred to jeopardize Medina/Newkirk's interest. However, the time logs Medina submitted as exhibits to the jury do not mention representation of Newkirk but any actions Medina took on his own behalf benefitted them both and did "double-duty." *See Chapa*, 212 S.W.3d at 313.

However, Medina cannot recover attorney's fees on his claims for fraudulent inducement and negligent misrepresentation. *See Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (attorneys' fees are not recoverable for prosecuting a fraud or negligent-misrepresentation claim.). Medina abandoned his tort claims and did not submit them to the jury although evidence supporting the claims was included at trial.

Although there is legally sufficient evidence of attorneys' fees, from the time logs submitted and testimony, we cannot discern how much time Medina spent on his abandoned tort claims. As a result, this issue must be remanded to the trial court to

determine segregation. *See Kinsel*, 526 S.W.3d at 428 (remanding for segregation of attorney's fees); *Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014) (per curiam) (remanding for the trial court to consider additional evidence for segregation of attorney's fees).

We sustain Vaughan's ninth issue in part.

## VII.   JUDGMENT

By his eleventh issue, Vaughan argues that the judgment is not supported by the pleadings and includes usurious interest. Vaughan's argument regarding the pleadings is without merit. Medina's Eighth Amended Petition sought recovery of the $300,000 principal on the note and "lawfully accrued and unpaid interest on the debt before maturity;" as well as "prejudgment and post-judgment interest on the matured, unpaid debt at the highest legal rate allowed by law."

It is Vaughan's burden to establish that the interest rate is usurious. He must prove that there was (1) a loan of money, (2) an absolute obligation to repay the principal, and (3) that the creditor exacted a greater compensation than that allowed by law for the use of its money. *See First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). Only the last element is disputed.

Parties to a written agreement may agree to an interest rate that does not exceed the weekly ceiling. *See* TEX. FIN. CODE ANN. § 303.002. Texas provides optional interest rate ceilings. *See id.* § 303.009.[4] Thus, Texas law authorizes a maximum lawful rate of

---

[4] Section 303.009 provides in part:

22

18 percent per annum to be applied to a written contract for personal loans or up to 28 percent for commercial loans. *See id.* § 303.009(b), (c).

As to Vaughan's claim that the judgment includes usurious interest, he relies on his original letter to Medina and does not explain why the trial court's apparent ruling that § 303.009 permits the interest is wrong. He instead argues only that the $57,000 should not have been included in the judgment without explaining the basis for his contention. Vaughan argues only that Medina "conceded" usury by responding to Bishop's usury letter with one that said Medina did not intend to collect and did not seek interest in excess of the legal limit. We hold Vaughan's issue is inadequately briefed. *See* TEX. R. APP. P. 38.1. We overrule Vaughan's eleventh issue.

## VIII. USURY

By his tenth issue, Vaughan argues that the trial court erred by failing to award him reasonable attorney's fees for his usury claim. Vaughan raised the usury issue and presented evidence to the trial court which advised him that it would consider the matter while the jury was deliberating. The record includes no explicit ruling on Vaughan's usury claim but Medina argues that the trial court overruled the claim in its entirety and held that the original note was not usurious pursuant to § 303.009 of the finance code. *See* TEX.

---

(a) If the rate computed for the weekly, monthly, quarterly, or annualized ceiling is less than 18 percent a year, the ceiling is 18 percent a year.

(b) Except as provided by Subsection (c), if the rate computed for the weekly, monthly, quarterly, or annualized ceiling is more than 24 percent a year, the ceiling is 24 percent a year.

(c) For a contract made, extended, or renewed under which credit is extended for a business, commercial, investment, or similar purpose, the limitation on the ceilings determined by those computations is 28 percent a year.

TEX. FIN. CODE ANN. § 303.009.

23

Fɪɴ. Cᴏᴅᴇ Aɴɴ. § 303.009. The judgment does not award attorney's fees to Vaughan and includes the $57,0000 in challenged interest in the post-judgment computation of interest which supports Medina's argument. We overrule Vaughan's tenth issue and hold that he is not entitled to attorney's fees.

## IX.   Cᴏɴᴄʟᴜsɪᴏɴ

We affirm the judgment in part but reverse and remand in part to the trial court to determine the value of Vaughan's labor in his quantum meruit claim, his attorney's fees for that claim, if any, and segregation of Medina and Rodriguez's attorneys' fees for those causes of action for which fees may not be recovered and for those causes of action that were abandoned.

GINA M. BENAVIDES,
Justice

Delivered and filed the
23rd day of April, 2020.