

# NUMBERS 13-19-00461-CV AND 13-19-00462-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN RE FRAUDULENT HOSPITAL LIEN LITIGATION

---

**On appeal from the 444th District Court
of Cameron County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Perkes**

In cause number 13-19-00461-CV, appellant MedData, Inc. (MedData) appeals the trial court's order denying its motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011. In cause number 13-19-00462-CV, appellants Douglas Turek and Russ DeVore likewise appeal the trial court's order denying their motion to dismiss under the TCPA. *See id.* These appeals arise from a multidistrict litigation (MDL) proceeding regarding claims that medical liens filed pursuant to the Texas Property Code were fraudulent. *See* TEX. PROP. CODE ANN.

§§ 55.001–.008 (governing hospital and emergency medical services liens). Because the matters in both appeals are related, we issue this single memorandum opinion addressing both appellate causes in the interest of judicial efficiency. We affirm the trial court's orders in 13-19-00461-CV and 13-19-00462-CV.

## I. BACKGROUND

In the MDL proceeding, the plaintiffs are former emergency room patients who assert that they were injured in accidents caused by the negligence of third parties. They allege that the defendants filed fraudulent hospital liens to collect payment for the medical services provided to them. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (providing for civil liability related to "a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property").

Appellee Martha Hernandez originally filed suit against McAllen Hospitals, L.P. d/b/a McAllen Medical Center and Alegis Revenue Group, LLC (Alegis) in cause number C-1621-15-J in the 430th District Court of Hidalgo County, Texas. Her case was transferred into MDL Docket No. 15-0360, styled *In re Fraudulent Hospital Lien Litigation*, pending in the 444th District Court of Hidalgo County, Texas. *See* TEX. GOV'T CODE ANN. § 74.162 (providing for the transfer of "civil actions involving one or more common questions of fact" pending in the same or different courts "to any district court for consolidated or coordinated pretrial proceedings, including summary judgment or other dispositive motions, but not for trial on the merits"). After the transfer, Hernandez filed a "Plaintiff's First Amended CPRC Chapter 12 Petition Emergency Room Only." This amended petition included claims against McAllen Hospitals, L.P. d/b/a McAllen Medical Center; MedData d/b/a Alegis; UHS of Delaware, Inc. d/b/a Universal Health Services of

2

Delaware, Inc. (UHS); and Douglas Turek and Russ DeVore, formerly doing business as Turek DeVore, P.C. (Turek DeVore).

MedData thereafter filed "Defendant MedData d/b/a [Alegis's] Anti-Slapp Motion to Dismiss Pursuant to CPRC § 27.003." This motion clarifies that MedData is the successor-in-interest to Alegis, which handled the hospital lien notices related to Hernandez, and that "MedData" refers collectively to both Alegis and MedData. MedData asserted that the TCPA applies in this case because Hernandez's claims implicate the right to petition and the right to free speech; that Hernandez cannot present prima facie evidence to support each element of her claims; and that, even if she could, relevant statutes of limitations bar Hernandez's claims.

Similarly, at this point in the litigation, Turek DeVore and Russ DeVore filed a motion to dismiss Hernandez's claims under the TCPA. Like MedData, they asserted that the TCPA applies in this case because Hernandez's claims implicate the right to petition and the right to free speech; that Hernandez cannot present prima facie evidence to support each element of her claims; and that the relevant statutes of limitations bar Hernandez's claims.

Thereafter, Hernandez filed her "Plaintiff's Verified Second Amended CPRC Chapter 12 Petition Emergency Room Only and Request for Declaratory Relief." This was the live pleading at the time that the trial court ruled on the motions to dismiss. Hernandez filed this pleading against the same defendants as in her earlier pleadings, although Hernandez identified MedData as "MedData d/b/a Alegis Revenue Group, LLC." Here, Hernandez alleged that McAllen Hospitals, L.P. and UHS own and operate McAllen Medical Center; however, the emergency department at McAllen Medical Center is under lease and contract with a third party which has the "ultimate control" over the emergency

3

department and "all decisions concerning the operation within the emergency department are made by [that] third party."

Hernandez alleged that, after an automobile accident on April 12, 2013, she presented herself to the emergency department at McAllen Medical Center at 6:46 p.m., received an outpatient EMTALA[1] medical screening, and left the emergency department at 10:51 p.m. She was treated for pharyngitis (unrelated to the motor vehicle accident) and was provided with stitches for a laceration to her right upper eyelid. She was billed $17,866.00 for the services she was provided. She alleged that she was not admitted to the hospital. *See* TEX. PROP. CODE ANN. § 55.002(a) ("For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident."). She further asserted:

> Knowing Plaintiff was not admitted to the hospital, Defendants, intending to cause financial injury, unlawfully filed a hospital lien against Plaintiff on or about May 21, 2013. As a common fraudulent business practice of Defendants herein, Defendants used an invalid hospital lien to fraudulently collect more from this former Emergency-Room-Only patient (outpatient) than the "reasonable and regular rate" legally allowed to be collected under Chapter 55 of the Texas Property Code.
>
> . . . .
>
> Based upon information and belief, Defendants UHS of Delaware, Inc., McAllen Hospitals, L.P., Alegis Revenue Group, L.L.C., Douglas Turek, Individually, and Russ DeVore, Individually, who formerly did business as Turek DeVore, P.C., [No Longer in existence] and Meridian Revenue Solutions, LLC, Alegis Revenue Group, LLC [Now MedData] and d/b/a Cardon Collection Services, LLC, entered into a certain written agreement dated May 1st, 2008 [the Universal Health Services, Inc. System Service Agreement] for the purpose of defrauding accident victims only receiving EMTALA medical screenings in the emergency department operated by a third party not a party to this litigation, who were not admitted to a hospital[,] seeking to extort and collect unreasonable hospital charges from the

---

[1] "EMTALA is a federal law enacted in 1986 to prevent "patient dumping"—that is, the practice of refusing to treat patients who are unable to pay." *Tenet Hosps. Ltd. v. Boada*, 304 S.W.3d 528, 533 (Tex. App.—El Paso 2009, pet. denied) (discussing the Emergency Medical Treatment and Labor Act).

patients' potential third party personal injury claims by fraudulently filing hospital liens in violation of Chapter 55 of the Texas Property Code hospital admission and rate limitation requirements. The agreement was modified in May of 2013, and both agreements provided an incentive [a percentage of collections per file] for Alegis Revenue Group, LLC [Now MedData] and Turek DeVore, P.C.'s shareholders, Douglas Turek and Russ DeVore, and each Defendant named herein, to reap unlawful profits for their personal use and gain as a result of their actual fraud, dishonesty of purpose and intent to deceive accident victims which were committed against accident victims like Plaintiff Hernandez herein. These Defendants sought to aggressively and wrongfully engage in fraudulent collection activities by, among other things, fraudulently filing hospital liens for emergency room EMTALA screening services only in violation of Chapter 55 of the Texas Property Code and filing fraudulent hospital liens in violation of the rate limitations of Chapter 55 in order to collect sums of money for EMTALA medical screening services that the hospitals were not legally entitled to collect as the amount the hospital charged exceeded the reasonable and regular rate limitation of Chapter 55. Additionally, the hospital liens at issue are fraudulent for the reasons that each Defendant conspired with the other and knew the charges sought for collection dramatically exceeded the rate limitations of Chapter 55 of the Texas Property Code . . . .

Hernandez sought declaratory relief and alleged that the appellants violated Chapter 55 of the Texas Property Code[2] and Chapter 12 of the Texas Civil Practice and Remedies Code by fraudulently filing a hospital lien when Hernandez was not admitted to the hospital within 72 hours after the accident and because the amount of the lien was in excess of the rate limitation provided by the statute. She further argued: (1) the appellants made, presented, or used a document with knowledge that it was a fraudulent lien; (2) the

---

[2] Hernandez's claims regarding the invalidity of the lien rely, in part, on § 55.002(a) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 55.002(a). According to this section:

A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident.

*Id*. Parts of Chapter 55 of the property code were amended effective June 10, 2019, after the inception of Hernandez's lawsuit. Among other changes, the Legislature added § 55.0015, which states that "[f]or purposes of this chapter, an injured individual is considered admitted to a hospital if the individual is allowed access to any department of the hospital for the provision of any treatment, care, or service to the individual." *Id*. § 55.0015. We express no opinion regarding the application of this revision, and we need not further address it here.

appellants intended that the document be given legal effect; and (3) the appellants intended to cause her financial and economic injury.

Turek and DeVore subsequently filed an amended motion to dismiss under the TCPA reiterating and expanding on the allegations previously made in their original motion to dismiss. Their amended motion included the affidavits of Turek and Wendy Schloenfeld, an employee of MedData.

On August 5, 2019, the trial court heard argument on the appellants' motions to dismiss. On August 30, 2019, the trial court denied the motions to dismiss. These appeals ensued. In cause number 13-19-00461-CV, MedData raises the following issues:

A.    Hernandez's action challenges MedData's filing of a lien notice on behalf of a hospital, a public statement relating to a matter of public concern that must be filed before petitioning a court for relief under the Hospital Lien Statute. Does the TCPA apply to this lawsuit?

B.    The TCPA's commercial speech exemption applies only to a defendant's statement about its own goods or services made to its own actual or potential customers rather than to the public at large. MedData's notice concerned a third-party hospital's goods or services and was not made to MedData's customer, but to the public at large. Does MedData's notice fall outside the scope of the commercial speech exemption?

C.    The TCPA's bodily injury exemption applies only to legal actions seeking recovery for bodily injury or statements regarding such actions. MedData's notice was neither a legal action seeking recovery for bodily injury nor a statement regarding such an action. Does MedData's notice fall outside the scope of the personal injury exemption?

D.    The statute of limitations for a fraudulent lien claim is four years. MedData filed its notice of lien on May 21, 2013, well over four years ago, and long before Hernandez re-filed her claims against MedData. Has MedData established the affirmative defense of limitations under the TCPA such that dismissal is required?

E.    A fraudulent lien claim requires proof that the lien in question was fraudulent. Hernandez produced no evidence that the hospital lien MedData noticed was fraudulent. Has she failed to produce "clear

6

and specific" evidence to support her claim, as needed to survive a motion to dismiss under the TCPA?

In cause number 13-19-00462-CV, Turek and DeVore raise one issue asserting that the trial court erred by denying their motion to dismiss when Hernandez's case "arises from an allegedly fraudulent hospital lien filed against [Hernandez's] personal injury claim as a result of an automobile accident where appellants are attorneys who represent entities that file such liens." Turek and DeVore's arguments under this issue, which we will term as sub-issues, mirror the issues raised by MedData in its appeal. Specifically, Turek and DeVore assert that: (1) the TCPA applies to Hernandez's claims; (2) the commercial speech and bodily injury exemptions do not apply; (3) the statute of limitations bars Hernandez's claims; and (4) Hernandez failed to make a prima facie case for her claims.

## II. THE TCPA

The TCPA is codified in Chapter 27 of the Civil Practice and Remedies Code, which is titled, "Actions Involving the Exercise of Certain Constitutional Rights." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011; *Buckingham Senior Living Cmty., Inc. v. Washington*, No. 01-19-00374-CV, 2020 WL 2988368, at *2–5, __ S.W.3d __, at __ (Tex. App.—Houston [1st Dist.] June 4, 2020, no pet. h.).[3] The purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely,

---

[3] Hernandez filed this action prior to September 1, 2019, the date upon which the recent amendments to the TCPA went into effect. The prior, pre-amendment version of the TCPA therefore applies to Hernandez's claims and this appeal. *See* Act of May 20, 2019, 86th Leg., R.S., §§ 11–12, 2019 Tex. Sess. Law Serv. 684, 687 ("Chapter 27, Civil Practice and Remedies Code, as amended by this Act, applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose. . . . This Act takes effect September 1, 2019."). All of our citations and analyses are to the TCPA as it existed prior to September 1, 2019, unless otherwise noted. Nothing in this opinion should be read to express an opinion regarding the proper construction or application of any amended provision of the TCPA.

associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). Stated otherwise, the TCPA's purpose is to protect "citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). We construe the act "liberally to effectuate its purpose and intent fully." TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(b); *see State ex rel. Best*, 562 S.W.3d at 11.

The TCPA achieves its purpose by creating a "set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting." *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring); *see Buckingham Senior Living Cmty., Inc.*, 2020 WL 2988368, at *2–5, __ S.W.3d at __ (discussing TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003–.005, .009). A party may appeal from an interlocutory order that denies the party's TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12); *In re Geomet Recycling LLC*, 578 S.W.3d 82, 86 (Tex. 2019) (orig. proceeding).

## A.    TCPA's Statutory Scheme

The applicable version of § 27.003 of the TCPA provides that a party may file a motion to dismiss a legal action that "is based on, relates to, or is in response to a party's exercise of one of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct" as

described by the act. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). The act defines "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). The act also defines the three sets of rights protected by TCPA summary-dismissal procedures.

This appeal concerns both the right of free speech and the right to petition. The act states that the exercise of the right of free speech "means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The act's definition of the "exercise of the right to petition" is far more extensive:

"Exercise of the right to petition" means any of the following:

(A)    a communication in or pertaining to:

    (i)    a judicial proceeding;

    (ii)    an official proceeding, other than a judicial proceeding, to administer the law;

    (iii)    an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

    (iv)    a legislative proceeding, including a proceeding of a legislative committee;

    (v)    a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

    (vi)    a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

    (vii)    a proceeding of the governing body of any political subdivision of this state;

    (viii)    a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

9

(ix)     a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

(B)     a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C)     a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D)     a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E)     any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

*Id.* § 27.001(4).

## B.     TCPA's Shifting Burden of Proof

The statutory scheme includes a "zig-zagging" burden of proof. *Tex. Custom Wine Works, LLC v. Talcott*, 598 S.W.3d 380, 383 (Tex. App.—Amarillo 2020, no pet.). A movant under the TCPA has the initial burden to show by a preponderance of the evidence that the nonmovant has asserted a "legal action" that is based on, relates to, or is in response to the movant's exercise of one of the three rights delineated in the TCPA, the right of free speech, the right to petition, or the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 571 (Tex. App.—Fort Worth 2019, pet. denied).

If the movant meets that burden, then the burden shifts to the nonmovant who has the burden to establish "by clear and specific evidence a prima facie case for each

essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Youngkin*, 546 S.W.3d at 679; *Kawcak*, 582 S.W.3d at 571. If the nonmovant fails to satisfy that burden, the court must dismiss the action within the TCPA's expedited time frame. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). If the nonmovant meets that burden, then the burden finally shifts back to the moving party to prove each essential element of any valid defenses by a preponderance of the evidence. *Id.*; *Youngkin*, 546 S.W.3d at 679; *Kawcak*, 582 S.W.3d at 571.

The TCPA expressly provides for several exemptions from its application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. These exemptions are "wholly unnecessary unless the TCPA applies" and, as discussed above, "the TCPA only applies when the claim is based on the defendant's exercise of the right of free speech, association, or to petition." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(1)–(4), .003(a)). "Thus, when invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process." *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.); *see Pacheco v. Rodriguez*, 600 S.W.3d 401, 408 (Tex. App.—El Paso 2020, no pet.) ("Thus, we begin with the threshold question of whether the TCPA applies to Appellees' crossclaim. If not, we need not address the question of whether the bodily injury/wrongful death exception applies to the claim, or any of Appellants' other sub-issues."); *see also Castleman*, 546 S.W.3d at 688 (analyzing the commercial speech exemption).[4]

---

[4] We note that some courts have addressed the applicability of an exemption without addressing the first step of the burden-shifting scheme. *See* TEX. R. APP. P. 47.1 (stating that appellate courts must address every issue raised that is necessary to final disposition of appeal); *see, e.g.*, *Sanders ex rel. Ejiofor v. Bansal*, No. 01-18-00508-CV, 2019 WL 7341660, at *4 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, pet. denied) (mem. op.) ("Because it is dispositive, we limit our analysis to the Patients' argument that their

If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *State ex rel. Best*, 562 S.W.3d at 11; *Morrison*, 578 S.W.3d at 680. The supreme court has explained that "[c]onstruing the TCPA liberally means construing its exemptions narrowly," in part because of "the legislature's clear instruction to construe the TCPA liberally to protect citizens' rights to participate in government." *State ex rel. Best*, 562 S.W.3d at 14; *see ADB Interest, LLC v. Wallace*, No. 01-18-00210-CV, 2020 WL 2787586, at *8, __ S.W.3d __, __ (Tex. App.—Houston [1st Dist.] May 28, 2020, no pet. h.). The party asserting that the exemption applies has the burden to prove its application. *Schimmel v. McGregor*, 438 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

There are two exemptions at issue in this appeal: the "commercial speech" exemption and the "bodily injury exemption." The TCPA's commercial speech exemption provides:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). The Texas Supreme Court has established a four-part test for application of the commercial speech exemption.

fraudulent lien suits are not subject to the TCPA's dismissal procedures because the communications at issue—the Providers' hospital liens—are exempted commercial speech."); *Santellana v. CentiMark Corp.*, No. 01-18-00632-CV, 2019 WL 1442228, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (mem. op.) (stating that commercial speech exemption constitutes independent ground "that can fully support a trial court's denial of a motion to dismiss filed pursuant to the TCPA"). While this is a sensible approach that comports with the appellate rules, we do not decide whether this is necessary in all circumstances, and in this case, will fully address the statutory analysis.

*Castleman*, 546 S.W.3d at 688. Under *Castleman*, the commercial speech exemption applies when:

(1)     the defendant was primarily engaged in the business of selling or leasing goods or services,

(2)     the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,

(3)     the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and

(4)     the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Id.* The commercial speech exemption's reference to "the sale or lease of goods or services" refers "to *the defendant's* sale or lease of goods or services." *Id.* (emphasis added). In contrast, the exemption does not apply, and a defendant may avail himself of the TCPA's protections, "when he speaks of other goods or services in the marketplace," i.e., goods or services that the speaker does not sell or lease. *Id.* at 689; *see also Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *5 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.).

Under the "bodily injury" exception, the TCPA does not apply to "a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(c); *Kirkstall Rd. Enters., Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex. App.—Dallas 2017, no pet.) ("The plain language of section 27.010(c) excludes legal actions seeking recovery for bodily injury."). As noted, a legal action means "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or

13

equitable relief." *See id.* § 27.001(6). "Bodily injury" commonly denotes physical damage to a person's body. *Cavin v. Abbott*, 545 S.W.3d 47, 57 (Tex. App.—Austin 2017, no pet.) (collecting authorities).

The exemption applies when a claim seeks recovery for bodily injury and does not distinguish based on the type of claim asserted. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(c); *Cavin*, 545 S.W.3d 57 (holding that an assault claim fell within the bodily injury exemption because it "seeks recovery for alleged injuries that are plainly of this character"); *Kirkstall Rd. Enters., Inc.*, 523 S.W.3d at 253 (holding that the bodily injury exemption applied to the plaintiff's suit against a documentary producer because the plaintiff sought to recover for four gunshot wounds that he claimed he sustained as a result of the producer's negligence in editing and producing its program); *see also Superior HealthPlan, Inc. v. Badawo*, No. 03-18-00691-CV, 2019 WL 3721327, at *4 (Tex. App.—Austin Aug. 8, 2019, no pet.) (mem. op.) (holding that the bodily injury exemption applied to a healthcare liability claim). The TCPA does not make the "bodily injury" exemption contingent on a threshold showing of merit or "clear and specific evidence." *Cavin*, 545 S.W.3d at 58.

We address these exemptions in detail later in this opinion.

## C. Deadlines and Discovery

The TCPA sets deadlines for filing a motion to dismiss, hearing the motion to dismiss, ruling on the motion to dismiss, and issuing findings, if any, on the imposition of sanctions. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(b), .004, .005(a), .007(b). The filing of a motion to dismiss suspends discovery unless the trial court orders specific and limited discovery upon the showing of good cause. *See id.* §§ 27.003(c), .006(b); *In re SSCP Mgmt., Inc.*, 573 S.W.3d 464, 472–73 (Tex. App.—Fort Worth 2019, orig.

14

proceeding) (acknowledging that "some merits-based discovery" may be necessary for nonmovant to respond to TCPA dismissal motion).

## D.    Standard and Scope of Review

We perform a de novo review of a trial court's ruling on a TCPA motion to dismiss. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). We likewise apply a de novo standard of review to statutory construction issues that arise in analyzing a ruling on a motion to dismiss filed under the TCPA. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). When construing the TCPA, as with any other statute, our objective is to give effect to the legislative intent, looking first to the statute's plain language. *Id.* If that language is unambiguous, "we interpret the statute according to its plain meaning." *Id.*

In considering a motion to dismiss, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587; *Tex. Custom Wine Works, LLC*, 598 S.W.3d at 384; *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). A trial court considers the pleadings and evidence in the light most favorable to the nonmovant. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

### III. ANALYSIS

We apply the statutory scheme's "zig-zagging" burden of proof. *Tex. Custom Wine Works, LLC*, 598 S.W.3d at 383.

15

## A.    Initial Burden

We first examine whether MedData, Turek, and DeVore, as movants, met their initial burden to show by a preponderance of the evidence that Hernandez has asserted a "legal action" that is based on, relates to, or is in response to the movants' exercise of one of the three rights delineated in the TCPA, the right of free speech, the right to petition, or the right of association. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Youngkin*, 546 S.W.3d at 679; *Kawcak*, 582 S.W.3d at 571.

In their TCPA motions, these appellants argued that Hernandez's suit is based on, related to, or in response to their right to petition and right of free speech. As noted, the TCPA defines the "exercise of the right to petition" broadly, encompassing "a communication in or pertaining to," among other things, "a judicial proceeding" or "an official proceeding, other than a judicial proceeding, to administer the law." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A). In addition, the exercise of the right to petition includes communications "in connection with an issue under consideration or review" in an "official proceeding" as well as communications that are "reasonably likely to encourage such consideration or review." *Id.* § 27.001(4)(B)–(C). "Official proceeding" means "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id.* § 27.001(8). In addition, "exercise of the right to petition" includes "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *Id.* § 27.001(4)(E).

The TCPA defines "exercise of the right of free speech" as a communication made in connection with a matter of public concern. *Id.* § 27.001(3). A "communication" is defined to include "the making or submitting of a statement or document in any form or

16

medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" includes an issue related to: health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *See id.* § 27.001(7); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018). A broad range of communications, in various media, are covered by the TCPA. *See Adams*, 547 S.W.3d at 894 (discussing the nature of communications that fit within the TCPA). Further, the TCPA does not discriminate between public and private communications if they are made in connection with a matter of public concern. *Lippincott*, 462 S.W.3d at 509.

On substantially similar facts, our sister court in Tyler concluded that a lawsuit filed by an injured party seeking declaratory relief that the bills reflected in a hospital lien were excessive and unreasonable fell within the purview of the TCPA as a "legal action" that is based on, relates to, or is in response to the movant's exercise of the right of free speech. *ETX Successor Tyler v. Pridgeon*, 570 S.W.3d 392, 397 (Tex. App.—Tyler 2019, no pet.) ("Accordingly, ETMC's filing of the hospital lien was an exercise of its right to free speech."); *see also Berry v. ETX Successor Tyler*, No. 12-18-00095-CV, 2019 WL 968528, at *3 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.) (reaching the same conclusion); *E. Tex. Med. Ctr. Athens v. Hernandez*, No. 12-17-00333-CV, 2018 WL 2440508, at *3 (Tex. App.—Tyler May 31, 2018, pet. denied) (mem. op.) (same).

In *Pridgeon*, the plaintiff was seriously injured in a car accident and was treated at ETMC. *See* 570 S.W.3d at 396. ETMC filed a hospital lien pursuant to Chapter 55 of the Texas Property Code on all causes of action or claims filed by or on behalf of the plaintiff for damages arising from the injury for which he was admitted to the hospital. *Id.* ETMC asserted an outstanding balance of $597,830.16 for the medical care that it provided to

17

the plaintiff. *Id.* The plaintiff ultimately settled its personal injury claims arising from the motor vehicle accident and subsequently filed a declaratory judgment action against ETMC for a determination of the parties' rights, status, and legal relationship arising under Chapter 55 of the property code. *Id.* ETMC filed a motion to dismiss pursuant to the TCPA which was overruled by operation of law and ETMC appealed that ruling. *Id.*

As in this case, ETMC argued that the notice of hospital lien that it filed constituted an exercise of the right to free speech, or alternatively, the right to petition. The Tyler court agreed that ETMC's actions implicated the right of free speech:

> A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. TEX. PROP. CODE ANN. § 55.002(a) . . . . The lien attaches to the proceeds of a settlement of a cause of action or a claim by the injured individual. *Id.* § 55.003(a)(3). The statute helps ensure prompt and adequate treatment for accident victims. *McAllen Hosps., L.P. v. State Farm Cty. Mut. Ins. Co. of Tex.*, 433 S.W.3d 535, 537 (Tex. 2014). To secure the lien, the hospital must provide notice to the injured individual and file written notice of the lien with the county clerk of the county in which the services were provided. TEX. PROP. CODE ANN. § 55.005 . . . .
>
> ETMC's filing of written notice of the hospital lien fits within the definition of communication. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1). The lien, as an attempt to obtain payment for medical services, relates to health. *See* TEX. PROP. CODE ANN. § 55.002. The provision of medical services by a health care professional constitutes a matter of public concern. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 510 (Tex. 2015). Further, the statute's purpose in obtaining treatment for accident victims affects community well-being. *See McAllen Hosps., L.P.*, 433 S.W.3d at 538. Accordingly, ETMC's filing of the hospital lien was an exercise of its right to free speech. Pridgeon's declaratory judgment cause of action, in which she seeks a declaration regarding the construction of the hospital lien statute, is in response to ETMC's exercise of its right of free speech.

*Pridgeon*, 570 S.W.3d at 397; *see also Berry*, 2019 WL 968528, at *3; *E. Tex. Med. Ctr. Athens*, 2018 WL 2440508, at *3.

18

We concur with this analysis. Under the property code, subject to certain conditions, a "hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person." TEX. PROP. CODE ANN. § 55.002(a). To secure the lien, the hospital must provide notice to the injured individual and file written notice of the lien with the county clerk of the county in which the services were provided before money is paid to an entitled person because of the injury. *See id.* § 55.005. The lien attaches to the patient's cause of action against the third party, a trial court's judgment or public agency's decision in a proceeding brought by the patient, and the proceeds of a settlement of the patient's cause of action. *See id.* § 55.003(a).

The purpose of the lien is to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims and reducing hospital costs. *See McAllen Hosps., L.P.*, 433 S.W.3d at 537; *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007); *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985). The lien is "part and parcel" of the underlying claim and only exists because of the claim. *Linnstaedter*, 226 S.W.3d at 411. "As a chose in action is the intangible personal property of the claimant, a lien against such property is necessarily a claim against its owner." *Id.* Therefore, "a lien against a patient's tort recovery is just as much a claim against the patient as if it were filed against the patient's house, car, or bank account." *Id.*

As a threshold matter, the filing of the lien meets the definition of a "communication" under the TCPA because it includes "the making or submitting of a statement or document in any form or medium. . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1). Further, the hospital lien constitutes a communication made in connection with "a matter of public

19

concern" as a matter involving health or safety. *See id.* §§ 27.001(3), .001(7). The statutory hospital lien is an attempt to obtain payment for medical services for injuries caused by an accident that is attributed to the negligence of another person and it encourages the prompt and adequate treatment of accident victims, and thus relates to health. *See* TEX. PROP. CODE ANN. § 55.002*; McAllen Hosps., L.P.*, 433 S.W.3d at 537; *Linnstaedter*, 226 S.W.3d at 411; *Bashara*, 685 S.W.2d at 309. And, "the provision of medical services by a health care professional constitutes a matter of public concern." *Lippincott*, 462 S.W.3d at 510; *see Pridgeon*, 570 S.W.3d at 397.

Here, the filing of the hospital lien is a communication that relates to health, and the provision of medical services by a health care professional constitutes a matter of public concern. *See id.* Thus, the filing of the lien constituted a communication made in connection with a matter of public concern and thus implicated the TCPA's definition of the "exercise of the right of free speech." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3); *Pridgeon*, 570 S.W.3d at 397; *see also Berry*, 2019 WL 968528, at *3; *E. Tex. Med. Ctr. Athens*, 2018 WL 2440508, at *3.

Hernandez's "Verified Second Amended CPRC Chapter 12 Petition Emergency Room Only and Request for Declaratory Relief" requested declaratory relief and brought causes of action relating to the allegedly fraudulent hospital lien. Because Hernandez is challenging the amount of the lien and the reasonableness of the hospital bills secured by the lien, her lawsuit is in response to these appellants' exercise of their right of free speech. *See Pridgeon*, 570 S.W.3d at 397; *see also E. Tex. Med. Ctr. Athens*, 2018 WL 2440508, at *2–3. Accordingly, we conclude that appellants, as movants, met their initial burden to show by a preponderance of the evidence that Hernandez has asserted a "legal action" that is based on, relates to, or is in response to the appellants' exercise of the right

20

of free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Youngkin*, 546 S.W.3d at 679; *Kawcak*, 582 S.W.3d at 571. Because these appellants met their initial burden as to the "exercise of the right of free speech," we need not address whether their conduct qualified as the "exercise of the right to petition." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also* TEX. R. APP. P. 47.1. We sustain MedData's first issue and Turek and DeVore's first sub-issue. Accordingly, we will continue with our analysis of these appeals in accordance with the statutory scheme.

## B. Statutory Exemptions

We must next consider the applicability of any statutory exemption. *See* *Castleman*, 546 S.W.3d at 688; *Morrison*, 578 S.W.3d at 680. Hernandez asserted that the commercial speech and bodily injury exemptions apply in this case. In its second and third issues, respectively, MedData strenuously disagrees. Turek and DeVore likewise contend that these exemptions are inapplicable in their second and third sub-issues.

### 1. Commercial Speech Exemption

As stated previously, the TCPA's commercial speech exemption provides that the TCPA does not apply to a legal action brought "against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . ., or a commercial transaction in which the intended audience is an actual or potential buyer or customer." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b).

The Houston First Court of Appeals and the Tyler Court of Appeals have concluded that the commercial speech exemption applies under similar facts regarding lawsuits based on hospital liens. *See N. Cypress Med. Ctr. Operating Co. GP, LLC v. Norvil*, 580 S.W.3d 280, 285 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (concluding that the

21

commercial speech exemption applied to hospital liens); *Pridgeon*, 570 S.W.3d at 398 (concluding that the bodily injury and commercial speech exemptions both applied to a lawsuit seeking declaratory relief regarding a hospital lien); *see also Sanders ex rel. Ejiofor v. Bansal*, No. 01-18-00508-CV, 2019 WL 7341660, at *4 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, pet. denied) (mem. op.) ("According to the Patients, the Providers' hospital liens are nothing more than attempts to collect payment owed on business transactions and, as such, are not TCPA-protected."); *Berry*, 2019 WL 968528, at *4 ("In summary, ETMC was primarily engaged in the business of selling goods or services, that is, healthcare. ETMC filed the lien in its capacity as [a] seller of healthcare, and the lien arose out of a commercial transaction involving ETMC's provision of healthcare to Berry, who was an intended audience of the lien."); *E. Tex. Med. Ctr. Athens*, 2018 WL 2440508, at *4 (concluding that the commercial speech exemption applied to ETMC's conduct in filing the hospital lien).

In *North Cypress*, the First Court of Appeals considered a case wherein a medical facility filed a hospital lien on its patient's pending causes of action against an alleged tortfeasor. *See N. Cypress Med. Ctr. Operating Co. GP, LLC*, 580 S.W.3d at 282; *see also Schmidt v. Crawford*, 584 S.W.3d 640, 654–55 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (discussing *North Cypress*); *Diogu Law Firm PLLC v. Experience Infusion Ctrs. LLC*, No. 01-19-00494-CV, 2020 WL 1681182, at *3 (Tex. App.—Houston [1st Dist.] Apr. 7, 2020, no pet.) (mem. op.) (same). In *North Cypress*, the patient filed a petition for declaratory judgment seeking a determination of the parties' rights and a determination of what qualified as a reasonable charge for the services the hospital provided. 580 S.W.3d at 283. The hospital filed a TCPA motion seeking dismissal of the patient's suit on the basis that the hospital's filing of a lien constituted a communication made in the

22

exercise of the hospital's right of free speech and right to petition. *Id.* The patient argued the commercial-speech exemption applied, making the TCPA's summary-dismissal procedures unavailable to the hospital. *Id.* The hospital responded that the exemption did not apply because its lien was not filed for the purpose of securing sales in goods or services, and the intended audience of the lien was not actual or potential buyers or customers, referencing the second and fourth *Castleman* elements. *Id.* at 286. The trial court held that the commercial speech exemption applied, and the appellate court agreed.

The court rejected the hospital's first argument that its lien was not filed for the purpose of securing sales in services. *See id.* at 285–86. Under the court's analysis, the hospital filed the lien to recover fees for services it rendered to the patient, and in addition to the lien, the hospital filed counterclaims against the patient. *Id.* at 286. The hospital's efforts arose out of the commercial transaction between the hospital and patient whereby the hospital provided services in exchange for a fee. *Id.* The hospital filed the lien "trying to get paid for the healthcare services it provided to Norvil," and to complete that transaction and collect from the patient the fee it claimed was due. *See id.* (noting hospital liens against patients' tort recoveries are claims against patients).

The court also rejected the hospital's second argument, that the intended audience of the lien was not its customer. *Id.* The court considered that a lien against a patient's tort recovery is a claim against the patient, *see Linnstaedter*, 226 S.W.3d at 411, and, in essence, that the hospital was making a demand on the patient to pay the amount owed. *See N. Cypress Med. Ctr. Operating Co. GP, LLC*, 580 S.W.3d at 286. Thus, the First Court of Appeals reasoned that the patient was a member of the intended audience. *Id.*

In *East Texas Medical Center Athens*, the Tyler Court of Appeals concluded that the four *Castleman* factors for the commercial speech exemption were met: the medical

23

center was primarily engaged in the business of selling health services, it filed the hospital lien in its capacity as a seller of those health services, the lien arose out of a commercial transaction involving the medical center's health services, and the intended audience of the hospital lien included the plaintiff. *See* 2018 WL 2440508, at *3. Consequently, the court concluded that the commercial speech exemption applied to the medical center's conduct. *See id.*

MedData asserts that this exemption does not apply in this case because: (1) the intended audience of the lien notice did not include its customers, that is MedData's customers, but instead targeted the customers of third party hospitals, and MedData provided services to the hospitals themselves; (2) the lien notice does not concern MedData's own services, but instead concerns healthcare services provided by the hospital; (3) MedData did not make a statement in its capacity as a seller of goods or services, but rather, the lien notice "simply publicized the Hospital's lien" and "MedData's statement [arose] in the performance of its duties under a contract" with the hospital; and (4) the lien notice does not "propose" a transaction. Turek and DeVore make similar arguments regarding the applicability of this exemption. They assert that (1) the intended audience did not include their customers, who are hospitals; and (2) the lien notice does not concern their own services.

The majority of the foregoing arguments are founded on appellants' allegations that they did not provide the medical services at issue in the lien. In support of this allegation, MedData cites, inter alia, *Toth v. Sears Home Improvement Products, Inc.*, 557 S.W.3d 142, 154 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In *Toth*, Sears hired Toth, as an independent contractor, to inspect moisture damage to wood flooring that Sears had sold to Langham and installed in her home. *Id.* at 146–47. Toth, who owned

24

his own flooring business at the time, recommended to Sears that Langham's wood flooring needed to be reinstalled and that Bostik, a membrane sealant, should be used as part of the reinstallation to prevent moisture damage. *Id.* at 147. Langham sued Sears, who had refused to reinstall the flooring. *Id.* During the course of the litigation, Sears learned that Toth had recommended Bostik to Langham and had told her that he believed it would prevent moisture damage. *Id.* at 147–48. Sears filed suit against Toth as a third-party defendant for breaching his agreement with Sears by recommending a non-authorized product, Bostik, to Langham. *Id.* at 148. Toth moved to dismiss under the TCPA. *Id.*

Citing to *Castleman*, the *Toth* court stated that "the mere fact that a person sells goods or services does not deny him the TCPA's protections when he speaks of 'other goods' in the marketplace." *Toth*, 557 S.W.3d at 154 (citing *Castleman*, 546 S.W.3d at 688). The court held that because Toth did not sell Bostik, his recommendation of the product to Langham was not a statement "about" Toth's particular goods or services, i.e., flooring services, but rather it was a statement about a generally available product, Bostik. *Id.* The court reasoned that, therefore, Toth's recommendation was "akin to expressing an opinion or evaluation about another's product in the marketplace, which is ordinarily protected speech." *Id.* (citing *Better Bus. Bureau of Metro. Hous., Inc.*, 441 S.W.3d at 353–54 (stating that the exercise of the right of free speech as contemplated by the TCPA includes a person's right to communicate reviews or evaluations of services in the marketplace).

This analysis is sound, but it is not applicable to the facts in this case. According to the record evidence, MedData served as the hospital's agent and, according to Hernandez's allegations and pursuant to contract, MedData had a financial interest

25

against Hernandez in filing the lien. Although Turek and DeVore attempt to characterize their relationship to this case as counsel for the medical defendants involved, Hernandez's allegations and the evidence indicate that they owned and operated Alegis, and by contract, owned a percentage of the profits obtained through collection of Hernandez's lien. Thus, while the lien arose out of the medical services that were provided to Hernandez—that is, other goods, products or services in the marketplace—the appellants effectively owned part of the lien that was filed against Hernandez.

In short, according to the record, the appellants were in the business of filing and collecting on hospital liens. *See Castleman*, 546 S.W.3d at 688 (requiring the defendant to be primarily engaged in the business of selling or leasing goods or services). They filed the hospital lien against Hernandez in order to collect payment on the hospital lien for the medical services provided to Hernandez. *See id.* (requiring the defendant to have made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services). The hospital lien is the kind of goods or services that the appellants provide. *See id.* (requiring the statement or conduct at issue to arise from a commercial transaction involving the kind of goods or services the defendant provides). And, the intended audience of the lien, which we note was a public filing, included actual or potential customers of the appellants. *See id.* (requiring the intended audience of the statement or conduct to be actual or potential customers of the defendant for the kind of goods or services the defendant provides). In this regard, we note that the language of the statutory exemption merely requires that "the statement or conduct arise[] out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). In comparing and contrasting this language to other

26

provisions in the TCPA, the appellate courts have concluded the Legislature used "arise out of" in this section broadly to include statements and conduct ancillary to a commercial transaction, and have not construed "arising out of" narrowly to mean a statement or conduct that is based on or that comprises the commercial transaction itself. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 605 (Tex. App.—San Antonio 2018, pet. denied); *Backes v. Misko*, 486 S.W.3d 7, 21 (Tex. App.—Dallas 2015, pet. denied); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 531 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.); *see also Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *6 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.). Hernandez was the intended audience of the lien and MedData, Turek, and DeVore intended her to complete the commercial transaction that they proposed by filing the lien.

Finally, MedData asserts that the lien does not "propose" a transaction. In short, MedData appears to contend that, for a statement to arise out of a commercial transaction, it must be made for the purpose of securing a future sale. For this proposition, MedData relies on the Texas Supreme Court's statement in *Castleman* that the commercial speech exemption applies to commercial speech which does no more than propose a commercial transaction. *See Castleman*, 546 S.W.3d at 688, 690. However, this statement does not purport to refine the exemption's third requirement; rather, it differentiates between speech directed to customers and speech directed elsewhere, as part of the analysis of the fourth requirement. *See id.* In fact, interpreting the statute as MedData suggests would be contrary to the statute's language insofar as it refers explicitly to "actual" and "potential" buyers. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). Contrary to MedData's assertion, *Castleman* did not limit the applicability of the exemption

to speech intended to secure future sales. *See Castleman*, 546 S.W.3d at 688; *Norvil*, 580 S.W.3d at 286; *see also Sanders*, 2019 WL 7341660, at \*5.

We conclude that the commercial speech exemption applies, and thus we overrule MedData's second issue and Turek and DeVore's second sub-issue.

### 2. Bodily Injury

In MedData's third issue, and in Turek and DeVore's third sub-issue, they assert that the "bodily injury" exemption does not apply to this case. We note that the Tyler Court of Appeals has concluded that a declaratory judgment action regarding the validity of a hospital lien falls within the bodily injury exemption to the TCPA:

> The TCPA does not apply to a legal action seeking recovery for bodily injury or to statements made regarding that legal action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(c). Here, the hospital lien sought to recover judgments for damages and the proceeds of settlements of Dubose's causes of action for injuries sustained by him in the accident. Thus, the lien is a statement regarding Dubose's bodily injury action. Pridgeon's declaratory judgment action involves the interpretation and application of the hospital lien statute pursuant to which ETMC filed a lien to obtain payment for its services to Dubose for his bodily injuries. We are unpersuaded by ETMC's argument that the lien cannot be a statement regarding Dubose's bodily injury action because the lawsuit was filed after the lien was recorded. By its own terms, the lien was to attach to judgments or settlements occurring at any time after the lien was recorded. We conclude that this exemption applies, making Pridgeon's declaratory judgment suit exempt from application of the TCPA's dismissal scheme.

*Pridgeon*, 570 S.W.3d at 398. MedData, Turek, and DeVore vociferously disagree with the *Pridgeon* analysis and contend that Hernandez's lawsuit is neither a "legal action seeking recovery for bodily injury" nor is it a "statement" made regarding that legal action but is instead is a legal action for economic damages resulting from alleged statutory violations, and thus, under the plain meaning of the statute, the bodily injury exemption does not apply because Hernandez's lawsuit concerns a debt collection matter. However, having concluded that the commercial speech exemption applies to this case, we need

28

not further address the applicability of the bodily injury exemption. *See* TEX. R. APP. P. 47.4.

## C.     Summary

Appellants, as movants, met their initial burden to show by a preponderance of the evidence that Hernandez has asserted a "legal action" that is based on, relates to, or is in response to the appellants' exercise of the right of free speech. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *Youngkin*, 546 S.W.3d at 679; *Kawcak*, 582 S.W.3d at 571. And, construing the TCPA exemptions narrowly, *see State ex rel. Best*, 562 S.W.3d at 14, we conclude that Hernandez met her burden to show that the commercial speech exemption applies. *See Schimmel*, 438 S.W.3d at 857. Accordingly, the TCPA does not apply and may not be used to dismiss the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *State ex rel. Best*, 562 S.W.3d at 14; *Morrison*, 578 S.W.3d at 680. Having reached these conclusions, we need not address the appellants' remaining issues or sub-issues. *See* TEX. R. APP. P. 47.4.

## IV. CONCLUSION

We affirm the judgment of the trial court in cause number 13-19-00461-CV and cause number 13-19-00462-CV.

GREGORY T. PERKES
Justice

Delivered and filed the
20th day of August, 2020.

29